**2022 IL 127229**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 127229)

CHARLES GREEN, Appellant, v. THE CHICAGO POLICE
DEPARTMENT, Appellee.

*Opinion filed September 22, 2022.*

JUSTICE MICHAEL J. BURKE delivered the judgment of the court, with
opinion.

Chief Justice Anne M. Burke and Justices Theis, Neville, Overstreet, and Carter
concurred in the judgment and opinion.

Justice Holder White took no part in the decision.

**OPINION**

¶ 1 A public body has 5 to 10 business days to respond to a request for information
under the Freedom of Information Act (FOIA) (5 ILCS 140/3(d), (e) (West 2018)).
The requester then has five years to initiate an enforcement action to compel

disclosure of information withheld by the agency. *Id.* § 11(a); 735 ILCS 5/13-205 (West 2018). Often, the operative law and facts do not change between the public body's denial of access and the circuit court's review of the denial. But sometimes, like in this case, circumstances change, casting the denial in a new light. The issue presented is whether FOIA authorizes the circuit court to account for changed circumstances when determining whether the withholding of public information is proper.

¶ 2 An injunction that was entered in another action prohibited the public body from releasing certain records requested in this case. The injunction was vacated while this action was pending, but the public body persisted in its denial on the ground that the information was withheld properly at the time of the request. The parties dispute whether the Cook County circuit court should have accounted for the invalidation of the injunction when reviewing the denial.

¶ 3 We hold that, unless the FOIA exemption states otherwise, the circuit court should review the withholding of information under the circumstances as they existed when the public body made its decision. 5 ILCS 140/3, 11 (West 2018). This "time-of-request" approach to reviewing FOIA denials is practical and fosters finality. If the information becomes releasable later, a requester may refile his request and avail himself of FOIA's guarantees of prompt government compliance with valid requests. *Id.* § 3(d) (FOIA requires the public body to respond within five business days unless the time for response is properly extended).

¶ 4 Conversely, the "time-of-review" approach would compel a public body to monitor and revise its FOIA responses for up to five years or risk liability for the requester's attorney fees in an enforcement action. Judicially mandating an endless cycle of reprocessing of every denial and redaction would undermine FOIA's goal of providing public records as "expediently and efficiently as possible." *Id.* § 1.

¶ 5                                    I. BACKGROUND

¶ 6 The Chicago Police Department (CPD) received two FOIA requests—one from local newspapers and one from plaintiff, Charles Green—for all information relating to citizen complaints filed against Chicago police officers since January 1, 1967. The records have been divided conceptually into two groups based on their

age, because the injunction barred the release of records that were more than four years old at the time they were requested. The injunction initially applied to the newspapers' FOIA request and was later applied to plaintiff's FOIA request, which is at issue in this appeal.

¶ 7    CPD eventually created an online portal through which the public could access the records that were not covered by the injunction. The released records are almost 300,000 pages and cost $750,000 to review, redact, and produce. CPD asserts that producing the records covered by the injunctions would take an additional 10 years and cost $8 million to process.

¶ 8                    A. The Newspapers' FOIA Request and the
                         Fraternal Order of Police Litigation

¶ 9    In August 2014, the Chicago Tribune and the Chicago Sun-Times (collectively, the newspapers) requested a list of the names of police officers who had received at least one citizen complaint, as well as the officer's date of appointment, the complaint category, the complaint registry (CR) number, the incident date, the date the complaint was closed, the final finding of the investigation, and any disciplinary action taken. *Fraternal Order of Police, Chicago Lodge No. 7 v. City of Chicago*, 2016 IL App (1st) 143884, ¶ 4.

¶ 10    In October 2014, the City of Chicago (City) and CPD informed the Fraternal Order of Police (FOP) that they intended to release the requested information. The FOP, in turn, filed a complaint to enjoin the release of files that were more than four years old. The FOP cited a provision in its collective bargaining agreement (CBA) that required the destruction of records of alleged police misconduct once the records reached that age. *Id.* ¶ 5.

¶ 11    In December 2014, the circuit court granted the FOP a preliminary injunction prohibiting the release of CR files that were more than four years old as of the date of the newspapers' FOIA request. *Id.* ¶ 10. In May 2015, the court entered another preliminary injunction that broadly prohibited the release of any CR files that were more than four years old on the date of a subsequent FOIA request. *Id.* ¶ 13. On November 4, 2015, an arbitrator ruled that the City had violated the CBA and

ordered the City to purge the CR files covered by the injunctions. *Id.* ¶ 14.

¶ 12                    B. Plaintiff's FOIA Request and Enforcement Action

¶ 13       Meanwhile, plaintiff became aware that some of the CR files he wanted might be destroyed. Plaintiff is a former inmate convicted in 1986 of offenses arising from a quadruple homicide. He claims he was wrongly convicted and wishes to prove his innocence by exposing police misconduct.

¶ 14       On November 18, 2015, two weeks after the arbitrator ordered the documents destroyed, plaintiff's counsel sent CPD an e-mail with the subject line "Charles Green FOIA Request." Plaintiff requested "any and all closed complaint register files that relate to Chicago Police Officers."

¶ 15       CPD did not respond to plaintiff's request, which constitutes a denial under FOIA. 5 ILCS 140/3(d) (West 2018) ("Failure to comply with a written request, extend the time for response, or deny a request within 5 business days after its receipt shall be considered a denial of the request."). CPD's failure to respond barred CPD from treating the request as unduly burdensome. *Id.* Ordinarily, a public body may deny a request as unduly burdensome by demonstrating "there is no way to narrow the request and the burden on the public body outweighs the public interest in the information." *Id.* § 3(g).

¶ 16       On December 4, 2015, plaintiff filed this enforcement action, which was assigned to the trial judge who was presiding over the FOP litigation. Plaintiff alleged CPD had violated FOIA by failing to produce the requested documents or otherwise answer his request. He sought, *inter alia*, an order compelling CPD to produce the requested records with any exempted material redacted.

¶ 17       CPD asserted two affirmative defenses, arguing (1) certain documents or parts of documents were exempt from production because they contained private or personal information and (2) the May 2015 injunction in the FOP litigation barred CPD from producing CR files that were more than four years old at the time of plaintiff's request. For almost two years, the circuit court entered a series of continuances while the FOP litigation progressed.

- 4 -

¶ 18                               C. The Injunctions Are Vacated

¶ 19        On July 8, 2016, the appellate court vacated the two preliminary injunctions as against public policy. *Fraternal Order of Police, Chicago Lodge No. 7*, 2016 IL App (1st) 143884, ¶¶ 35-40. The appellate court also vacated the arbitration award that had ordered the files destroyed, and this court affirmed the decision. *City of Chicago v. Fraternal Order of Police*, 2019 IL App (1st) 172907, ¶¶ 37-40, *aff'd*, 2020 IL 124831, ¶¶ 43-44.

¶ 20                            D. Cross-Motions for Summary Judgment

¶ 21        On March 9, 2018, CPD moved for partial summary judgment, arguing that plaintiff was not entitled to the CR files dated 1967 through 2011 because they were subject to the injunction at the time of plaintiff's request. On July 25, 2018, the circuit court denied CPD's motion, despite determining that the documents had not been withheld improperly when they were requested. Then, on September 19, 2018, the court ordered CPD to produce the CR files dated 2011 to 2015 by December 31, 2018.

¶ 22        In November and December 2018, the parties filed cross-motions for summary judgment on the issue of whether CPD could rely on the recently vacated injunction to withhold the CR files dated 1967 through 2011. Plaintiff argued that "an expired injunction has no legal effect in the present" and that requiring plaintiff to start over with a new request after years of litigation would be futile and inconsistent with FOIA.

¶ 23        CPD responded that the CR files previously covered by the injunction were exempt because they contained information specifically prohibited from disclosure by state law. 5 ILCS 140/7(1)(a) (West 2018). CPD argued that a lawful court order takes precedence over FOIA's disclosure requirements, so when an injunction bars the release of records, a "requester must first have the court that issued the injunction modify or vacate its order barring disclosure." *In re Appointment of Special Prosecutor*, 2019 IL 122949, ¶¶ 66-67. CPD concluded that withholding the CR files dated 1967 to 2011 was not improper because the injunction barred their release at the time of plaintiff's request.

¶ 24　　During this time, CPD did not produce any CR files dated 2011 to 2015. At an April 5, 2019, hearing on the parties' pending motions, including a motion by plaintiff to compel production of those files, CPD stated that it was creating an online data portal for the files dated 2011 to 2015 but was still reviewing and redacting the relevant files.

¶ 25　　Over the ensuing months, the parties filed motions concerning the production of the CR files dated 2011 to 2015. Plaintiff moved twice to compel compliance with the court's April 5, 2019, order, invoking the court's contempt power, in light of CPD's failure to comply with the December 31, 2018, deadline.

¶ 26　　On January 10, 2020, more than four years after plaintiff's request, the circuit court granted plaintiff summary judgment. The court also imposed a $4000 civil penalty against the City based on a finding that CPD had willfully and intentionally failed to comply with the court's order to produce the CR files dated 2011 to 2015. The court ordered CPD to produce at least 3000 of those files per month until production was complete. The court also ordered CPD to produce the CR files dated 1967 to 2011 by December 31, 2020.

¶ 27　　On March 16, 2020, the circuit court found there was no just reason for delaying appeal of the January 10, 2020, order. See Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). The court stayed production of the CR files dated 1967 to 2011 pending the outcome of the appeal.

¶ 28　　　　　　　　　　　　　E. Appellate Decision

¶ 29　　The appellate court accurately framed the issue as "whether the [public body's] decision should be evaluated at the time the FOIA request is denied or at some later stage of litigation, depending on the circumstances." 2021 IL App (1st) 200574, ¶ 22. The appellate majority, citing *Bonner v. United States Department of State*, 928 F.2d 1148, 1149 (D.C. Cir. 1991), and *Lesar v. United States Department of Justice*, 636 F.2d 472, 480 (D.C. Cir. 1980), observed that "[c]ourts confronting this issue have overwhelmingly considered whether the documents requested were improperly withheld *at the time the decision to withhold was made*." (Emphasis in original.) 2021 IL App (1st) 200574, ¶¶ 22-23.

¶ 30     The majority determined that the relevant point for evaluating the withholding of information was CPD's constructive denial in November 2015. Thus, the majority held, CPD could not lawfully comply with plaintiff's request for the files covered by the May 2015 injunction, which was a lawful court order that took precedence over FOIA's disclosure requirements. *Id.* ¶ 25 (citing *Special Prosecutor*, 2019 IL 122949, ¶ 66).

¶ 31     The dissent countered that, because "everyone agrees" there was no longer a court order in place barring disclosure, forcing plaintiff to "start over with a new FOIA request and return to the 'back of the line' " would delay disclosure and allow CPD to assert exemptions "it failed to raise in the first instance." *Id.* ¶ 33 (Delort, P.J., dissenting).

¶ 32     Plaintiff filed a petition for leave to appeal, which we allowed pursuant to Illinois Supreme Court Rule 315 (eff. July 1, 2018).

¶ 33                                   II. ANALYSIS

¶ 34                               A. Summary Judgment

¶ 35     This appeal arises from the parties' cross-motions for summary judgment.

> "[S]ummary judgment should be granted only where the pleadings, depositions, admissions and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to judgment as a matter of law." *Pielet v. Pielet*, 2012 IL 112064, ¶ 29.

> See 735 ILCS 5/2-1005 (West 2018). "When parties file cross-motions for summary judgment, they mutually agree that there are no genuine issues of material fact and that only a question of law is involved." *Jones v. Municipal Employees' Annuity & Benefit Fund*, 2016 IL 119618, ¶ 26. We review summary judgment *de novo. Pielet*, 2012 IL 112064, ¶ 30. *De novo* review also applies to our interpretation of FOIA, which presents a question of law. *Western Illinois University v. Illinois Educational Labor Relations Board*, 2021 IL 126082, ¶ 32.

¶ 36                          B. Statutory Interpretation

¶ 37        The objective of statutory interpretation is to ascertain and give effect to the legislature's intent, and the most reliable indicator of that intent is the language of the statute, given its plain and ordinary meaning. *Special Prosecutor*, 2019 IL 122949, ¶ 23. The General Assembly has declared FOIA's underlying public policy to be that "all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees consistent with the terms of this Act." 5 ILCS 140/1 (West 2018). "Such access is necessary to enable the people to fulfill their duties of discussing public issues fully and freely, making informed political judgments and monitoring government to ensure that it is being conducted in the public interest." *Id.* Therefore, "[i]t is a fundamental obligation of government to operate openly and provide public records as expediently and efficiently as possible in compliance with this Act." *Id.*

¶ 38        This clear expression of legislative intent means that public records are presumed to be open and accessible. *Special Prosecutor*, 2019 IL 122949, ¶ 25; *Lieber v. Board of Trustees of Southern Illinois University*, 176 Ill. 2d 401, 407 (1997). FOIA should be liberally construed to achieve the goal of providing the public with easy access to government information. *Special Prosecutor*, 2019 IL 122949, ¶ 25.

¶ 39        FOIA prescribes rules to ensure governmental compliance. FOIA requires a prompt response to a request for inspection or a copy of documents: "[e]ach public body shall, promptly, either comply with or deny a request for public records within 5 business days after its receipt *** unless the time for response is properly extended." 5 ILCS 140/3(d) (West 2018). A lack of a response denies the public body the right to "treat the request as unduly burdensome." *Id.* And when a person has been denied access to a public record, he "may file suit for injunctive or declaratory relief" and may seek attorney fees and civil penalties from the public body. *Id.* § 11(a), (i), (j).

¶ 40        The circuit court is vested with "jurisdiction to enjoin the public body from withholding public records and to order the production of any public records improperly withheld from the person seeking access." *Id.* § 11(d). Accordingly, the court may order production of public records only if "improperly *** withheld."

*Special Prosecutor*, 2019 IL 122949, ¶ 57. A public body may withhold public records that contain information that is exempt from disclosure, including "[i]nformation specifically prohibited from disclosure by federal or State law." 5 ILCS 140/7(1)(a) (West 2018).

¶ 41 CPD constructively denied plaintiff's FOIA request when it failed to answer the request during the five-day response period. See *id.* § 3(d). At the time, the injunction covering CR files that were more than four years old was in effect, barring disclosure of the files dated 1967 to 2011. But by the time the circuit court decided the cross-motions for summary judgment four years later, the injunction had been vacated and no longer supported the denial. The parties dispute whether FOIA authorized the circuit court to account for the invalidation of the injunction when determining whether CPD "improperly withheld" the records previously covered by the injunction.

¶ 42 This court recently stated in *Special Prosecutor* that, to obtain disclosure that is blocked by an injunction, a "[FOIA] requester must first have the court that issued the injunction modify or vacate its order barring disclosure." *Special Prosecutor*, 2019 IL 122949, ¶ 67. But notably, this court did not address whether vacating the injunction while the FOIA enforcement action was pending would support a finding that the records were improperly withheld. Answering this question requires interpretation of FOIA's enforcement provision.

¶ 43                    C. The Text of FOIA's Enforcement Provision

¶ 44 Plaintiff argues section 11 required the circuit court to consider the invalidation of the injunction because CPD's initial denial was "provisional" and "ongoing." Plaintiff asserts section 11 refers to denials in the present tense, which suggests to plaintiff that the legislature intended the evaluation of the information to be ongoing.

¶ 45 Section 11(d) prescribes the circuit court's authority to enjoin the public body from "withholding" public records if "improperly withheld." 5 ILCS 140/11(d) (West 2018). These terms do not shed light on whether the circuit court should review the public body's decision under the circumstances when it was made or at some later stage. In fact, plaintiff concedes that section 11(d) "places no temporal

limit on [the circuit court's] jurisdiction based on *when* the records were initially withheld." (Emphasis in original.) The absence of a temporal framework in section 11(d) shows the legislature did not express its intent concerning what circumstances the court should consider. Plaintiff argues the hearing should account for any changed circumstances, but CPD offers an equally reasonable interpretation that the denial should be evaluated as of the time of the request, which is the point at which FOIA expressly mandates a response from the public body.

¶ 46　　Plaintiff emphasizes that section 11(d) further provides that the court may retain jurisdiction and allow the public body additional time to review the records if the agency can show exceptional circumstances "exist" and that the body "is exercising" due diligence in responding to the request. See *id.* This jurisdiction-retention provision uses language in the present tense, but it authorizes the court to grant a public body more time to respond if the public body demonstrates that additional document review is necessary. It does not relate to the relevant circumstances a court should consider when reviewing a denial. The court's authority to retain jurisdiction is not relevant to the situation presented here, where the public body is defending a prior denial, not requesting more time for document review. The jurisdiction-retention provision does not indicate a legislative intent that the circuit court consider changed circumstances when evaluating a public body's earlier, unequivocal denial.

¶ 47　　Section 11(f) outlines the method for judicial review of the withheld information, but it does not shed light on legislative intent either. Plaintiff interprets the clause prescribing the court's "*de novo* review" as meaning review under the present circumstances, not those at the time of the denial. See *id.* § 11(f) ("the court shall consider the matter de novo, and shall conduct such in camera examination of the requested records as it finds appropriate to determine if such records or any part thereof may be withheld under any provision" of FOIA). But "*de novo*" in this context simply means the court shows no deference to the public body's decision to deny the request. *Southern Illinoisan v. Illinois Department of Public Health*, 218 Ill. 2d 390, 418 (2006) ("[section 11(f)] provides that the court shall conduct the hearing '*de novo*' "); *Kopchar v. City of Chicago*, 395 Ill. App. 3d 762, 769 (2009).

¶ 48 Section 11(f) also places the burden of proof on the public body to assert the exemption. Plaintiff emphasizes that the subsection requires the court to determine if the records "may be withheld" under FOIA, not whether they "were" properly withheld in the initial response. 5 ILCS 140/11(f) (West 2018). Plaintiff also highlights the public body's burden to establish that its denial "is" in accordance with FOIA and that any withheld record "is" exempt from disclosure. See *id.* The use of the present tense in section 11(f) suggests to plaintiff that the hearing should account for changed circumstances. But the section dictates the public body's burden of proof, not whether the court should consider changed circumstances when deciding whether the agency has met its burden.

¶ 49 D. Section 11 Is Ambiguous

¶ 50 The parties offer reasonable, but conflicting, interpretations of whether the circuit court should consider changed circumstances when reviewing a public body's decision to withhold information requested under FOIA. As section 11 does not explicitly state a temporal framework for accounting for postresponse events, we conclude the statute is ambiguous on this point. *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶ 11 (a statute is ambiguous if it is capable of more than one reasonable interpretation).

¶ 51 When a statute is ambiguous, we may consider extrinsic aids of construction to discern the legislature's intent. *Id.* ¶ 13. We may consider the consequences of construing the statute in one way or another, and in doing so, we presume that the legislature did not intend to create absurd, inconvenient, or unjust results. *People v. Marshall*, 242 Ill. 2d 285, 293 (2011). We construe the statute to avoid rendering any part of it meaningless or superfluous, and we do not depart from the plain statutory language by reading into it exceptions, limitations, or conditions that conflict with the expressed intent. *Id.* at 292. Nor do we view words and phrases in isolation but consider them in light of other relevant provisions of the statute. *Id.* at 292-93.

¶ 52 Out-of-state decisions pertaining to freedom of information may be persuasive. *Better Government Ass'n v. Village of Rosemont*, 2017 IL App (1st) 161957, ¶ 24. The Michigan Supreme Court has interpreted that state's FOIA to mean that, "unless the FOIA exemption provides otherwise, the appropriate time to measure

whether a public record is exempt under a particular FOIA exemption is the time when the public body asserts the exemption." *State News v. Michigan State University*, 735 N.W.2d 20, 26-27 (Mich. 2008). The court cogently observed that a public body makes FOIA decisions based on the information available at the time of the request and that it is not the function of reviewing courts to second-guess those decisions based on new information.

¶ 53 The procedures for submitting a request, responding to the request, and reviewing the response illustrate that the information available during the statutory response period is crucial to deciding whether the record may be withheld. *Id.* at 27. Like this state's FOIA, the Michigan FOIA requires the public body to respond to a FOIA request within five business days, with the possibility of a brief extension, but nothing requires a public body to continue monitoring a request once it has been denied. *Id.* Neither state's FOIA precludes a requester from resubmitting a previously unsuccessful request if he believes that, due to changed circumstances, the record can no longer be withheld. See *id.*

¶ 54 FOIA prescribes a brief period for an agency's response but does not specify a limitations period for suits to obtain declaratory or injunctive relief (5 ILCS 140/11 (West 2018)), so the general five-year limitations period applies (735 ILCS 5/13-205 (West 2018)). This means that a public body must answer a request in a matter of days, but a requester who is denied access has five years to file a complaint to compel disclosure. If the requester prevails, "the court *shall* award such person reasonable attorneys' fees and costs." (Emphasis added.) 5 ILCS 140/11(i) (West 2018). And

"[i]f the court determines that a public body willfully and intentionally failed to comply with [FOIA], or otherwise acted in bad faith, the court shall also impose upon the public body a civil penalty of not less than $2,500 nor more than $5,000 for each occurrence. In assessing the civil penalty, the court shall consider in aggravation or mitigation the budget of the public body and whether the public body has previously been assessed penalties for violations of [FOIA]. The court may impose an additional penalty of up to $1,000 for each day the violation continues [under certain circumstances]." *Id.* § 11(j).

¶ 55 Plaintiff's interpretation of section 11 would maintain a requester's place in the FOIA queue for five years, creating a perverse incentive to delay judicial review in

case the circumstances change. In the meantime, the public body would need to review and modify its responses in accordance with FOIA's numerous statutory exceptions until the withholding was vindicated in court or the statute of limitations expired. A public body that did not undertake the ongoing reprocessing of old requests would risk liability for attorney fees and perhaps civil penalties if information became releasable before judgment was entered. Plaintiff's interpretation would lead to the absurd result of burdening a public body with a requester's attorney fees even if the denial at the time of the request was proper. See *id.* § 11(i), (j).

¶ 56      Plaintiff does not claim a right to access CR files that were closed after his request, but one could argue the ongoing reprocessing scheme he advocates would apply not only to public information previously withheld, but to new public records that become releasable after the request. Plaintiff's November 18, 2015, request sought, without limitation, "any and all closed complaint register files that relate to Chicago Police Officers." The circuit court ordered CPD to produce all CR files created as of that date. But if FOIA were interpreted to account for changed circumstances during litigation, one could argue CPD should be ordered to update its disclosure with newly closed CR files; otherwise they would be deemed improperly withheld at the time of judicial review. We emphasize that plaintiff does not argue the point and we render no opinion on the matter except to illustrate the impracticality of an endless cycle of judicially mandated reprocessing of information.

¶ 57      By contrast, the time-of-request approach would free up the public body to respond quickly to each request and move on to the next request in the FOIA queue, without periodically reevaluating properly withheld documents. If circumstances change to render the initial denial improper, the requester may refile the request, at which point the public body must respond within five business days unless the time for response is properly extended. *Id.* § 3(d).

¶ 58      Ordinarily, "repeated requests from the same person for the same records that are unchanged or identical to records previously provided or properly denied under [FOIA] shall be deemed unduly burdensome under this provision." *Id.* § 3(g). But changed circumstances that affect lawful access to information alter the nature of the request, so the repeated-requests provision would not apply. Assessing the

public body's denial under the circumstances that existed at the time of the denial fosters finality in processing information, allows a requester to refile the request to account for postresponse events, and promotes the goal of providing releasable records expediently and efficiently.

¶ 59                                    E. Federal Decisions

¶ 60       Illinois courts also look to decisions construing the federal FOIA for guidance in construing this state's FOIA, due to the statutes' similarity. *Special Prosecutor*, 2019 IL 122949, ¶ 55. Similar to section 11 of the Illinois FOIA, section 552(a)(4)(B) of the federal FOIA provides that the appropriate federal district court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B) (2018).

¶ 61       The federal decisions cited by the appellate court support CPD's interpretation. *Bonner*, 928 F.2d 1148, involved representative sampling, which is an appropriate procedure for testing an agency's FOIA exemption claims when a large number of documents are requested. The State Department produced a number of the requested documents in full but redacted parts of 1033 documents, claiming exemptions. *Id.* at 1149. The requester chose 63 of the 1033 partially redacted documents, and the State Department agreed to index and explain why it withheld information in those documents. *Id.* However, by the time the index was tendered, 19 sample documents had been declassified because they were no longer considered a threat to national security. The State Department voluntarily released them in full to the requester " 'due to the change of circumstances and the passage of time.' " *Id.* The State Department asked the district court to review only the 44 documents that remained partially redacted. *Id.* at 1149-50.

¶ 62       The requester argued that the declassification of some documents rendered the sample unrepresentative because a corresponding percentage of the nonsample documents also must have become declassified after the FOIA request. *Id.* at 1153. The D.C. Circuit Court declined to require the State Department to " 'follow an endlessly moving target.' " *Id.* at 1153 (quoting *Meeropol v. Meese*, 790 F.2d 942, 959 (D.C. Cir. 1986)). The court explained that requiring an agency to "adjust or modify its FOIA responses based on postresponse occurrences could create an

- 14 -

endless cycle of judicially mandated reprocessing." *Id.* at 1152. Although reprocessing the entire group would likely result in the declassification of a number of documents, "the fact that some documents in a sample set become releasable with the passage of time does not, by itself, indicate any agency lapse." *Id.* at 1153.

¶ 63　　　The appellate court likewise relied on *Lesar*, 636 F.2d at 480, for the proposition that reprocessing documents based on postresponse events hinders FOIA's goal of rapid and efficient disclosure. In *Lesar*, the FBI evaluated and withheld certain documents according to an executive order used to classify each as top secret, secret, and confidential. *Id.* at 481. A new executive order implemented a looser classification scheme during the appeal. The D.C. Circuit Court declined to apply the new scheme as causing improper delay because it would require a remand to the district court to reevaluate each document. *Id. Bonner* and *Lesar* illustrate the impracticality of judicially mandated reevaluation of documents when circumstances change after the statutory response period.

¶ 64　　　Plaintiff argues that forcing him to file a new FOIA request to avoid the effect of the vacated injunction would cause unnecessary delay and "put him at the back of the line." Plaintiff claims the impropriety of CPD's ongoing denial is now obvious so the reprocessing that was rejected in *Bonner* and *Lesar* is unnecessary here. However, the *Bonner* court pointed out the unfairness to subsequent requesters of placing a prior requester first in line based on changed circumstances, when the withholding of information was proper when the agency made its decision. *Bonner*, 928 F.2d at 1153 ("Unless the State Department unlawfully withheld information in its prior responses, a court has no warrant to place Bonner at the head of the current State Department FOIA queue.").

¶ 65　　　Admittedly, the time-of-review approach carries superficial appeal in the context of CPD's constructive denial. The dissenting opinion below was based on the notion that "everyone agrees" there was no longer a court order barring disclosure. 2021 IL App (1st) 200574, ¶ 33 (Delort, P.J., dissenting). And plaintiff argues that "CPD has never pointed to any work—let alone significantly burdensome work—that it would have to completely re-perform following the Preliminary Injunction's vacation." But this overlooks CPD's affirmative defense that certain documents or parts of documents were exempt from disclosure because they contained personal or private information that required redaction.

- 15 -

¶ 66    Plaintiff's argument is animated by the legal effect of CPD's failure to respond to the request. Rather than resubmitting his request when the injunction was vacated, plaintiff chose to leverage CPD's failure to respond, which precluded CPD from charging a fee for copies or asserting that the request was unduly burdensome. 5 ILCS 140/3(d) (West 2018). Plaintiff makes this strategy explicit, arguing that the time-of-request approach "wrongfully rewards CPD for flouting its FOIA responsibilities and subjecting [plaintiff] and other FOIA requesters to months or years of obstruction and delay." But assuming *arguendo* the injunction was the only obstacle to disclosure, plaintiff could have resubmitted his request as soon as the injunction was vacated, and section 3(d) would have required CPD to comply promptly, potentially obviating years of litigation.

¶ 67    Finally, plaintiff cites federal decisions that depart from the general rule that a denial should be evaluated at the time of the request, but those involve the actual release of withheld information, unlike the CR files that became potentially *releasable* here. In *Florez v. Central Intelligence Agency*, 829 F.3d 178, 181 (2d Cir. 2016), the Central Intelligence Agency (CIA) denied a FOIA request on the ground that the existence or nonexistence of the information was classified. While the appeal was pending, the Federal Bureau of Investigation (FBI) answered an unrelated FOIA request by releasing several responsive documents that had become declassified. *Id.* The Second Circuit remanded the CIA action to the district court, directing the CIA to reevaluate its responses in light of the FBI's disclosure. *Id.* at 182. The court described the result as " 'the most sensible approach.' " *Id.* at 188. The court reasoned that requiring the requester to begin the process anew with the FBI disclosures in hand would be inefficient and cause a delay that "would not serve the purposes of FOIA or the interests of justice." *Id.*

¶ 68    The *Florez* court acknowledged the " 'general rule' that 'a FOIA decision is evaluated as of the time it was made and not at the time of a court's review.' " *Id.* at 187 (quoting *New York Times Co. v. United States Department of Justice*, 756 F.3d 100, 110 n.8 (2d Cir. 2014)). But the court held that, under the unique circumstances presented, ignoring postresponse events "makes little sense and would merely set in motion a multi-year chain of events leading inexorably back to a new panel of this Court considering the precise question presented here." *Id.* at 188. The court explained that it was departing from the general rule because the CIA argued that "the mere acknowledgement that it does or does not have"

responsive records "would harm the national security," but the newly released documents bore on whether the original justification was plausible. *Id.* at 185-86.

¶ 69 The revelation in *Florez* about the existence of some of the responsive documents bore on whether the agency's original justification for withholding information was plausible at the time it was made. Here, there is no dispute that CPD's constructive denial was justified because the injunction was a lawful court order barring the release of the CR files at issue.

¶ 70 Plaintiff also relies on *New York Times Co.*, 756 F.3d at 110 n.8, *opinion amended on denial of reh'g*, 758 F.3d 436 (2d Cir. 2014), *supplemented*, 762 F.3d 233 (2d Cir. 2014), where the court declined to apply the general time-of-request rule because the government had made postresponse disclosures that went "to the heart of the contested issue" about its legal justification for killing certain terrorists. Specifically, the government released a document, and officials made several statements that became publicly available. *Id.* at 110-11. The Second Circuit elected to consider the new official disclosures because they were "inconsistent with some of [the Government's] prior claims, including that the Government has never acknowledged CIA's operational involvement." *Id.* at 110 n.8. Moreover, the government was granted leave to submit new material concerning the public disclosures. *Id. New York Times* is factually distinguishable from this action, where CPD has not made any disclosures pertaining to the information covered by the injunction. See also *American Civil Liberties Union v. Central Intelligence Agency*, 710 F.3d 422, 431 (D.C. Cir. 2013) (taking notice of CIA's postresponse statements acknowledging existence of documents the agency had previously denied possessing); *Powell v. United States Bureau of Prisons*, 927 F.2d 1239, 1242 (D.C. Cir. 1991) (subsequent release of portions of withheld record undermined agency's position that entire record was exempt). The decisions cited by plaintiff do not compel this court to depart from the general rule articulated in *Bonner* and *Lesar*. Furthermore, we have considered plaintiff's remaining arguments and determine they lack merit.

¶ 71                                    III. CONCLUSION

¶ 72 The enforcement provisions of section 11 do not state a temporal framework for the judicial review of a public body's withholding of information under FOIA.

In light of this textual ambiguity, we hold that the appropriate time to measure whether a public record may be withheld is when the public body asserts the exemption and denies the request. Accounting for changed circumstances occurring during litigation would compel the public body to continually monitor the information and revise its responses, which would undermine the goal of producing public information expediently and efficiently and could lead to the absurd result of burdening the public body with the requester's attorney fees even if the denial was proper when the agency made its decision.

¶ 73     When CPD constructively denied plaintiff's request in November 2015, the May 2015 injunction barred CPD from releasing the responsive files that were more than four years old. 2021 IL App (1st) 200574, ¶ 26. The subsequent invalidation of the injunction was immaterial to whether the information had been withheld improperly. *Id.* Accordingly, the judgment of the appellate court is affirmed, and the judgment of the circuit court is reversed.

¶ 74     Appellate court judgment affirmed.

¶ 75     Circuit court judgment reversed.

¶ 76     JUSTICE HOLDER WHITE took no part in the consideration or decision of this case.