2023 IL App (1st) 220154

SIXTH DIVISION
August 11, 2023

No. 1-22-0154

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| CHICAGO RECYCLING COALITION, | ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 19 CH 10848 |
| THE CITY OF CHICAGO DEPARTMENT OF STREETS AND SANITATION, | ) ) ) | The Honorable Caroline K. Moreland, Judge, presiding. |
| Defendant-Appellee. | ) ) ) | |

JUSTICE TAILOR delivered the judgment of the court, with opinion.
Justices C.A. Walker and Oden Johnson concurred in the judgment and opinion.
Justice C.A. Walker, also specially concurred, with opinion, joined by Justice Oden Johnson.

**OPINION**

¶ 1    Plaintiff, Chicago Recycling Coalition (CRC), appeals from the circuit court's grant of summary judgment in favor of defendant, City of Chicago Department of Streets and Sanitation (Department), on CRC's complaint alleging violations of the Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2018)) in relation to certain City of Chicago (City) recycling program records. We affirm the circuit court.

¶ 2                                    I. BACKGROUND

¶ 3      The City is divided into six recycling zones, comprising single-family homes and buildings with four or less dwelling units. See Chicago Municipal Code § 11-4-1860 (amended Dec. 11, 1991); Chicago Municipal Code § 11-5-010 *et seq.* (added July 20, 2016)) (Recycling Ordinance). The Department contracts with Lakeshore Recycling Services (Lakeshore) and Waste Management to collect recycling material from four of the six recycling zones, and the Department collects recycling material from the remaining two recycling zones. In addition, pursuant to sections 11-5-030 and 4-6-130 of the Chicago Municipal Code (Chicago Municipal Code § 11-5-030 (amended Nov. 16, 2016); Chicago Municipal Code § 4-6-130 (amended at Chi. City Clerk J. Proc. 75,051 (Apr. 18, 2018))), the Department authorizes other licensed private entities and individuals, who we will refer to here as the third-party private haulers, to collect recycling materials from buildings with five or more dwelling units and commercial buildings.

¶ 4      On April 1, 2019, Carter O'Brien, vice president of CRC, sent the Department a FOIA request for three sets of records related to the City's recycling program. First, CRC requested "all 2018 records covered under section 11-5-220 *** in the Chicago Recycling Ordinance including third-party private hauler reports to DSS, records pertaining to recycling and waste handled by the Department of Streets and Sanitation, and the aggregated information provided in previous years." Second, CRC requested residual rate and other contamination data representing the percentage of non-recyclable material collected from receptacles where recycling materials are placed (commonly known as Blue Carts) by the Department, Lakeshore, and Waste Management. Third, CRC requested total monthly mileage travelled by the Department's garbage and Blue Cart trucks. This appeal only concerns CRC's first two requests.

¶ 5        On April 30, 2019, the Department produced via e-mail "[third-party private] hauler reports responsive to [CRC's] requests" and notified CRC that it was still searching for responsive documents for the remaining requests. On May 9, 2019, the Department sent a final response informing CRC that it had now attached all responsive records other than those records pertaining to miles travelled, which the Department stated it did not maintain.

¶ 6        On September 19, 2019, CRC filed a three-count complaint alleging that the Department failed to produce nonexempt public records (count I), failed to perform an adequate search for responsive records (count II), and willfully violated FOIA (count III).

¶ 7                                    A. Cross-Motions for Summary Judgment

¶ 8        CRC moved for partial summary judgment on counts I and II of its complaint on the bases that the records produced by the Department were incomplete and the Department had not met its burden to show that it conducted an adequate search for records. CRC argued that section 11-5-220(a) of the Recycling Ordinance (Chicago Municipal Code § 11-5-220(a) (added July 20, 2016)) requires all third-party private haulers to submit an annual report to the Department, that the Department only produced reports from 43 of the 115 licensed third-party private haulers, and that the Department provided no explanation or invoked any exemption under FOIA for not producing the reports of the remaining 72 third-party private haulers. CRC argued that it was the Department's burden to show by clear and convincing evidence that the Department had complied with its obligations under FOIA.

¶ 9        The Department cross-moved for summary judgment. With respect to CRC's request for third-party private hauler reports, the Department argued that it does not create such reports and that it had provided CRC with all the reports that had been submitted to the Department by the third-party private haulers. The Department stated that, each year, it (1) requests that third-party

private haulers submit the reports via e-mail, (2) provides the template for the reports to the third-party private hauler, and (3) organizes and stores the reports it receives as alphabetically arranged PDF documents in a shared folder on the Department's internal network servers. The Department stated that at the time of CRC's request, the Department had received annual reports from only 43 third-party private haulers and produced those 43 reports to CRC.

¶ 10    As to the second request seeking residual rate and contamination data, the Department stated that it provided all the records it had in its possession at the time of the request. The Department argued that it did not violate FOIA and that there was no evidence to support a finding that there was a willful violation or intentional failure to comply.

¶ 11    The Department's cross-motion for summary judgment was ultimately supported by two affidavits from Chris Sauve, the Department's deputy commissioner. In the first affidavit, Sauve averred that the Department relies on third-party private haulers to submit annual reports and can only provide a report if it receives one. Regarding residual rate and other contamination data, vendors provide that information to the Department monthly. The Department produced all the contamination rate data that it had in its possession to CRC.

¶ 12    In its combined reply in support of its motion for summary judgment and response to the Department's cross-motion for summary judgment, CRC argued that the Department failed to meet its burden of proving that its search for responsive records was adequate. According to CRC, if third-party private haulers had not submitted annual reports, then the Department was obligated to retrieve the report from those haulers and provide the reports to CRC "because the [third-party] private haulers are performing a governmental function." As for contamination data, CRC asserted that although the Department produced residual and contamination rate data for Waste Management and Lakeshore, the Department failed to produce data for the two recycling zones it

4

services. Moreover, the Department did not attest to whether it had produced any data related to the recycling zones it services nor did it address if or how it searched for the requested data. Finally, CRC contended that if the public body takes a position without legal justification, then the violation is willful.

¶ 13    The Department argued in its reply that the contamination data it produced for Lakeshore and Waste Management was provided by Lakeshore and Waste Management and that it does not produce similar reports for its own recycling collections. Further, the Department argued that Sauve's affidavit established that the Department provided all responsive records in its possession, and CRC presented no evidence to show that third-party private haulers perform a governmental function on the Department's behalf. Attached to its reply was Sauve's second affidavit, in which he averred, in relevant part, that third-party private haulers "are licensed to do business and to contract with private parties within the City, however, they are not contracting with working [*sic*] for [the Department]." He further averred that while the Department collects recyclable materials, it "does not compile and keep residual rate and contamination data for the recycling material collected by [the Department.]"

¶ 14    On October 2, 2020, the circuit court entered a written order on the cross-motions for summary judgment. The circuit court found that the Department was entitled to summary judgment on the first part of CRC's FOIA request for third-party private hauler reports because "[by] searching the appropriate folders, and producing all hauler documents in its possession at the time of [CRC's] request, [the Department] had conducted an adequate search for records and met its burden." The circuit court also found that the Department had a plausible justification for not producing the alleged missing records because it asserted that it produced everything in its possession. However, the circuit court entered summary judgment in favor of CRC with respect to

its request for residual rate and contamination data, finding that the Department had not: (1) produced its own data, (2) "clarif[ied] if and how [the Department's] records were searched for the missing data," or (3) invoked any exemption under FOIA.

¶ 15                                B. Motions to Reconsider

¶ 16     Both parties filed timely motions to reconsider. In its motion, the Department first argued that Sauve's affidavits established that the Department had provided all responsive records and that the Department does not compile residual and contamination reports like the ones prepared and submitted by Waste Management and Lakeshore to the Department. Second, the Department argued that it did not violate FOIA where Sauve's affidavits were uncontradicted. The Department requested that the circuit court reconsider the portion of its order finding that the Department violated FOIA. In response, CRC argued the circuit court correctly found that the Department violated FOIA because CRC requested underlying data, not necessarily reports generated by the Department, and the Department failed to meet its burden to provide any justification for not producing the data. CRC also argued it did not have an opportunity to contradict Sauve's second affidavit, which was attached to the Department's reply brief.

¶ 17     In its motion to reconsider, CRC first argued that the circuit court erred in finding that the Department complied with FOIA when it only produced the third-party private hauler reports in its possession because FOIA does not limit public records to documents in the possession of a public body. CRC argued that all 115 reports are in the control of the Department because section 11-5-220 of the Chicago Municipal Code requires third-party private haulers to prepare and submit reports to the Department. Second, CRC claimed that because the third-party private hauler reports are prepared for and are under the control of the Department, the Department has an obligation to obtain and disclose all such reports even if the Department does not possess the reports. Third,

CRC pointed to the enforcement mechanism in the Recycling Ordinance, which allows the Department to fine any third-party private hauler who does not comply with the reporting requirements. Notably, CRC attached a report from the City of Chicago Office of Inspector General (OIG), which stated that the Department "does not ensure that [third-party private haulers] submit complete, accurate, and timely annual reports detailing *** the amount and type of materials hauled[ ]," and it "does not review the adequacy of the hauler reports or cite haulers for failure to submit timely and complete reports." In response, the Department argued that the circuit court correctly found that compliance with FOIA is determined by the records that are in existence and in its possession at the time of the request and that potential fines that may be imposed on third-party private haulers under the City's Recycling Ordinance are irrelevant for purposes of the Department's obligations under FOIA.

¶ 18   On September 20, 2021, the circuit court denied CRC's motion to reconsider, but granted CRC leave to file a surresponse to the Department's motion for summary judgment regarding CRC's request for residual rate and contamination data. CRC filed a surresponse supported by an affidavit from O'Brien, who averred that data generated by private entities was still within the Department's control and thus subject to FOIA disclosure. O'Brien also asserted that the City contracts with private recycling sorting facilities that maintain residual rate data, and the Department could have obtained that data by requesting it from the sorting facilities. CRC argued that while the Department may not sort its own recycling or possess reports pertaining to the sorting of recycling, it does contract with sorting facilities that collect data pertaining to non-recyclable material removed during the sorting process. CRC asserted that the Department had not presented any evidence that it searched for any responsive data but instead assumed that the data did not exist.

¶ 19    On January 19, 2022, the circuit court granted the Department's motion to reconsider and entered summary judgment in favor of the Department, finding that it complied with its obligations related to CRC's FOIA request for residual rate and contamination data. The circuit court found that Sauve's affidavits established that the Department did not maintain the requested records and, as a result, the Department did not violate FOIA. Additionally, the circuit court found that while the Department ordinarily collects and maintains third-party private hauler reports, it does not have control over them until it receives them from the third-party private haulers. The circuit court memorialized its ruling in a written order entered on January 20, 2022. CRC filed a timely notice of appeal from the circuit court's summary judgment order and orders disposing of the motions to reconsider.

¶ 20                                II. ANALYSIS

¶ 21                         A. Summary Judgment Standard

¶ 22    We review summary judgment orders and questions involving the interpretation of FOIA *de novo*. *Green v. Chicago Police Department*, 2022 IL 127229, ¶ 35. Summary judgment is appropriate "only where the pleadings, depositions, admissions and affidavits ***, *** viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to judgment as a matter of law." *Pielet v. Pielet*, 2012 IL 112064, ¶ 29. "When parties file cross-motions for summary judgment, they mutually agree that there are no genuine issues of material fact and that only a question of law is involved." (Internal quotation marks omitted.) *Green*, 2022 IL 127229, ¶ 35. However, "the mere filing of cross-motions for summary judgment does not establish that there is no issue of material fact, nor does it obligate a court to render summary judgment." *Pielet*, 2012 IL 112064, ¶ 28.

Summary judgment should not be granted unless the right to judgment is clear and free from doubt. *Id.* ¶ 53.

¶ 23                                    B. Missing Third-Party Private Hauler Reports

¶ 24     CRC advances two arguments to support its position that the circuit court erred in entering summary judgment in favor of the Department on its request for the subject third-party private hauler reports. First, it argues that reports that are not in the Department's possession are nevertheless public records subject to FOIA under sections 2(c) and 7(2) of FOIA (5 ILCS 140/2(c), 7(2) (West 2018)), because section 11-5-220 of the Recycling Ordinance (Chicago Municipal Code § 11-5-220 (added July 20, 2016)), requires third-party private haulers to submit such reports to the Department annually. Second, it argues the Department did not perform an adequate search because it never sought the subject reports from the third-party private haulers.

¶ 25     The Department does not take a position on whether third-party private hauler reports not in its possession qualify as public records. Therefore, we assume, without deciding, that such reports are public records and the only issue before us is whether the Department conducted an adequate search for the "missing" reports. The Department argues that it performed an adequate search to satisfy its obligation under FOIA because it submitted a sufficiently detailed affidavit demonstrating that it had searched its files and records and turned over all the reports in its possession. Because it performed an adequate search, the Department argues that the burden shifts to CRC to provide evidence that the unproduced third-party private haulers reports actually exist. In response, CRC asserts that the Department's search was inadequate because the Department's "affidavits unequivocally establish that it never attempted to obtain the missing reports from the haulers." Furthermore, CRC argues that the Department has not shown that it is "powerless" to

obtain the reports and, in fact, could compel delinquent third-party private haulers to submit their reports by levying fines on them as authorized under the Recycling Ordinance.

¶ 26    To prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate. *BlueStar Energy Services, Inc. v. Illinois Commerce Comm'n*, 374 Ill. App. 3d 990, 996 (2007). The adequacy of the search is "judged by a standard of reasonableness and depends upon the facts of each case." (Internal quotation marks omitted.) *Better Government Ass'n v. City of Chicago Office of Mayor*, 2020 IL App (1st) 190038, ¶ 31. Illinois courts may look to federal cases interpreting the federal FOIA statute for guidance when construing similar provisions under the Illinois FOIA. *In re Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 35. A reasonable search "does not have to be exhaustive." *Miller v. United States Department of State*, 779 F.2d 1378, 1383 (8th Cir. 1985). However, the public body must "search all locations that are reasonably likely to contain responsive records." *Judicial Watch, Inc. v. United States Department of Justice*, 373 F. Supp. 3d 120, 126 (D.D.C. 2019). Once the public body satisfies its burden, we examine whether the requester has made "a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations, or provide some tangible evidence that *** summary judgment is otherwise improper." *BlueStar Energy Services, Inc.*, 374 Ill. App. 3d at 997. "[M]ere speculation that as yet uncovered documents might exist[ ] does not undermine the determination that the agency conducted an adequate search for the requested records." *Wilbur v. Central Intelligence Agency*, 355 F.3d 675, 678 (D.C. Cir. 2004).

¶ 27    We agree with the circuit court that the Sauve affidavits establish that the Department's search for the third-party private hauler reports was adequate and consistent with FOIA. Sauve asserted that the Department does not prepare third-party private hauler reports and relies on the

third-party private haulers to submit such reports to the Department on an annual basis. Each year, the Department notifies third-party private haulers of their obligation to submit the reports under the Recycling Ordinance. To facilitate the submission of the data, the Department sends them a sample form. The Department directs third-party private haulers to send the completed report to a specified e-mail address. Once received, the Department then organizes the reports alphabetically in a folder on the Department's servers. To respond to CRC's request for third-party private hauler reports, the Department searched within and produced all the reports in the designated folder. The affidavit clearly establishes a systematic method of organizing and storing the third-party private hauler reports that the Department receives and that a search of the specific folder is reasonably likely to contain all the submitted hauler reports.

¶ 28    CRC urges us to find that the Department's search was inadequate because it failed to inquire about and obtain the missing reports from the third-party private haulers who failed to submit their reports to the Department. First, it argues that a reasonable search under the facts of this case necessitates that the Department contact all delinquent third-party private haulers and instruct them to submit their reports. In support of this argument, CRC argues that the hauler reports are public records under Chicago Municipal Code sections 11-5-220(a) and 11-5-220(d), that section 11-5-250 requires that third-party private haulers submit the reports to the Department, and that there exists an enforcement mechanism. See Chicago Municipal Code § 11-5-220(a), (d) (added July 20, 2016) (requiring that third-party private haulers submit reports annually on a Department form); *id.* § 11-5-250 (giving the Department the authority to penalize third-party private haulers for failure to comply with the requirements of the Recycling Ordinance). Put differently, because third-party private haulers are legally obligated to submit reports and the

Department has legal authority to ensure compliance, a search for the records that does not include a request to the delinquent third-party private haulers to submit their reports is unreasonable.

¶ 29    We disagree. We find that, here, an adequate search was performed when the Department searched its records for the third-party private hauler reports and turned over every such report in its possession. FOIA does not impose an obligation on the Department to make a demand on a third-party private hauler who is delinquent or otherwise noncompliant with its obligation to submit its report to the Department. We note that CRC has not been entirely clear in its position before this court. In its opening brief, CRC argued that the circuit court "should have ordered [the Department] to *obtain* and produce the missing hauler reports by asking the hauler to produce them to [the Department] and taking any available steps to obtain them if the haulers refused." (Emphasis added.) This argument suggests that the "missing" third party private hauler reports exist and that the Department is obligated to retrieve them and turn them over to CRC. At argument, however, CRC took a more nuanced stance, stating that it was simply advocating that the Department "just ask" the third-party private haulers *if* they have their missing reports and that "[a]t no point has CRC argued that [the Department] create new records or that it must force the [third-party] private haulers to create the reports." Either way, CRC's position fails because there is no evidence in the record that any of the "missing" third-party private hauler reports actually exist. Rather, CRC's argument is based entirely on conjecture and speculation that they do. Moreover, it strains logic to assume that the delinquent third-party private haulers have in fact prepared reports but then not submitted them to the Department. Rather, the more logical conclusion is that they have simply failed to create the reports because the City apparently has not enforced the reporting requirements under the Recycling Ordinance.

¶ 30    The OIG report found that the Department has failed to enforce the requirement that third-party private haulers submit reports. With over 70 missing reports, there would appear to be systemic noncompliance by third-party private haulers in contravention of sections 11-5-220(a) and 11-5-220(d) of the Recycling Ordinance. We do not know if the Department has used its enforcement authority under section 11-5-220(e) (*id.* § 11-5-220(e) ("If the Commissioner notifies the Department of Business Affairs and Consumer Protection that the annual recycling report *** has not been filed ***, no private scavenger license *** shall be renewed by the Department of Business Affairs and Consumer Protection ***.")) and section 11-5-250 (*id.* § 11-5-250 ("[A]ny person who violates this [article] *** shall be subject to a fine ***.")). Through its FOIA request, however, CRC seeks to compel the Department to use its enforcement authority to force the delinquent third-party private haulers to comply with their reporting obligations under the Recycling Ordinance. But in so doing, CRC seeks to impermissibly expand the portfolio of FOIA beyond its expressed and intended purpose.

¶ 31    CRC relies on *Better Government Ass'n*, 2020 IL App (1st) 190038, ¶ 4, where the Better Government Association (BGA) alleged that the City violated FOIA because it "fail[ed] to inquire whether the personal text messages and e-mails of the officials named in the requests contained responsive records." The City argued that it was not required to search its officials' personal text messages and e-mails because they were not public records. *Id.* ¶ 15. After determining that the requested records qualify as public records, we found that the City did not perform an adequate search because, by its own admission, it had not searched the officials' personal text messages and e-mails. Then the City argued—like the Department does here—that it is not obligated to search personal e-mail and text accounts because BGA had not shown "that the accounts were likely to contain responsive records." *Id.* ¶ 34. However, we found that the City did not meet its burden to

show that it conducted a reasonable search and, thus, the burden did not shift to BGA to provide evidence. *Id.* Further, we reasoned that even if the burden shifted to BGA to produce evidence showing the search was inadequate, BGA produced sufficient evidence to suggest that "some of the named officials have communicated about public business via text messages." *Id.* Additionally, the evidence presented was "sufficient to require defendants to at least ask its officials whether they used their personal accounts for public business." *Id.*

¶ 32 Relying on *Better Government Ass'n*, CRC argues that the Department's search was inadequate because it never conducted a search with the delinquent third-party private haulers. We, however, agree, with the Department that *Better Government Ass'n* is distinguishable because the search there was inadequate and the requester presented evidence that the records could be found in the officials' private e-mails and text messages, whereas here the CRC presented no evidence to suggest that the delinquent third-party private haulers, despite not having submitted reports to the City, have in fact created the reports.

¶ 33 Here, the Department does not dispute that reports that exist are public records. Rather, it contends that it searched its records and produced all hauler reports it had in its possession. Again, there is no evidence that the delinquent third-party private haulers have in fact prepared hauler reports but failed to submit them to the Department. We observe that, typically, the evidence offered by the requester suggests that the record sought actually exists. See, *e.g.*, *id.* ¶ 33 (requester "presented some initial evidence that the officials in question used their personal accounts for public business"); see also *New Orleans Workers' Center for Racial Justice v. United States Immigration & Customs Enforcement*, 373 F. Supp. 3d 16, 37 (D.D.C. 2019) (requester "identified evidence demonstrating that the defendant 'ha[d] reason to know' that at least six other offices may possess responsive documents" (quoting *Valencia-Lucena v. United States Coast Guard*, 180

F.3d 321, 327 (D.C. Cir. 1999)). Here, instead of offering facts to suggest that the delinquent third-party private haulers have prepared the legally mandated reports but failed to submit them, CRC merely points to the legal mandate that a third-party private hauler submit a report on an annual basis to support its position that the Department's search was inadequate.

¶ 34    We find that neither sections 11-5-220(a) and 11-5-220(d), which mandate the creation and submission of the report to the Department, nor section 11-5-250, which establishes a fine for a failure to comply, amount to evidence sufficient to overcome the reasonableness of the Department's search. The legal mandate in the Recycling Ordinance is just that; it does not in any way evidence that the "missing" or delinquent reports have in fact been created. Moreover, the OIG report indicates that third-party private haulers have not complied with the Recycling Ordinance and that the Department has not generally used its enforcement power to compel the third-party private haulers to comply with their reporting obligations under the Recycling Ordinance. Given that it appears that the Department has not traditionally enforced the Recycling Ordinance, it is highly probable that the delinquent third-party private haulers likely failed to create the "missing" reports because they have not been subject to any adverse consequences for noncompliance. In any case, FOIA is not a mechanism through which other statutes or ordinances are enforced nor can a violation of another statute or ordinance—like the Recycling Ordinance here—form the basis for redefining a public body's obligation under FOIA. FOIA does not obligate a public body to create a new record. *Hamer v. Lentz*, 132 Ill. 2d 49, 54 (1989). It stands to reason then that FOIA does not obligate a public body to compel a nonpublic, third-party entity to create and submit a record, even if the submission of such record is mandated by law.

¶ 35                    C. Residual Rate and Contamination Data

¶ 36    CRC argues that the circuit court improperly limited the scope of its second request to only reports and compilations of data as opposed to raw data. CRC's request specifically asks for "residual rates and any other contamination data for the Blue Carts, broken down by service providers." The Department produced responsive documents for the recycling zones serviced by Waste Management and Lakeshore. At issue is whether the Department violated FOIA by failing to produce records of residual rate and contamination data for the zones it services.

¶ 37    The Department relies on the Sauve affidavits. The first affidavit by Sauve stated that "residual rates and contamination data *** are provided by the vendors to [the Department]," and the "rates for both Waste Management & [Lakeshore] had been provided." Sauve further avers that "[the Department] had provided the responsive documents in its possession concerning the residual rates and contamination records." In his second affidavit, Sauve averred that the Department "does not compile and keep residual rate and contamination data for the recycling materials collected by [the Department] *** [and] [u]nlike [the Department]'s contractors, [the Department] does not submit data to itself pursuant to any contracts." Moreover, Sauve averred that the Department "does not have a process to produce a comparable residual rate report as provided by the contractors."

¶ 38    Because the Department attached the second Sauve affidavit to its reply in support of its cross-motion for summary judgment, on CRC's motion to reconsider, the trial court allowed CRC to file a surreply. CRC attached an affidavit from O'Brien to its surreply, who averred that he is "aware that the City contracts with other facilities to do the sorting for the blue cart pickups." He further averred that he is "aware that the sorting facilities are required to maintain the residual rate." Finally, O'Brien averred that given his "experience with researching recycling and residual

16

rates in Chicago, all the Department would need to do to obtain the requested data is to call the sorting facilities and simply ask." The Department moved to strike O'Brien's affidavit arguing that it was not based on personal knowledge and therefore did not comply with Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013). The record does not indicate whether the circuit court ruled on the City's motion to strike.

¶ 39    CRC's argument in its opening brief primarily addresses whether the requested data is a public record. The Department takes no position on whether the contamination data is a public record. Assuming that the data qualifies as a public record, the Department contends that Sauve's affidavits establish that it does not keep this type of data for the recycling zones it services and that CRC has not presented any evidence to the contrary. In its reply on appeal, CRC argues, for the first time, that the O'Brien affidavit proves that the Department can acquire the data from the third parties it contracts with to sort its recycling.

¶ 40    "[A]n agency cannot improperly withhold records that it does not maintain, and that where the Government's declarations establish that a search would be futile, the reasonable search required by FOIA may be no search at all." (Internal quotation marks omitted.) *Whitaker v. Department of Commerce*, 970 F.3d 200, 207 (2nd Cir. 2020) (citing *MacLeod v. United States Department of Homeland Security*, No. 15-cv-1792, 2017 WL 4220398, at *11 (D.D.C. Sept. 21, 2017)). We find that the Department's affidavits establish that it "does not compile or *keep* residual rate and contamination data" for recycling materials it collects from the two zones its services. (Emphasis added.) Therefore, the Department is neither required to conduct a search nor is it required to produce additional records. Additionally, we find that CRC forfeited any argument based on the O'Brien affidavit because it did not raise it in its opening brief. "Points not argued

17

are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 41    Forfeiture aside, we note that O'Brien's affidavit does not refute Sauve's assertion that the Department "does not compile or keep residual rate and contamination data." Second, CRC failed to offer a foundation for O'Brien's statement in his affidavit that the Department could obtain such information by simply asking the sorting facilities. O'Brien did not point to any contracts, contractual obligation, or any specific research he may have conducted to come to his conclusion that the Department could obtain the data by simply asking for it. More importantly, Sauve did not explain the basis for his knowledge that sorting facilities are required to determine their residual rates. Accordingly, the Sauve affidavits stand unrebutted, and the circuit court property granted summary judgment to the City relating to the residual rate and contamination data.

¶ 42                                III. CONCLUSION

¶ 43    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 44    Affirmed.

¶ 45    JUSTICE C.A. WALKER, specially concurring:

¶ 46    I concur with the majority's conclusion that the City of Chicago Department of Streets and Sanitation (Department) met its burden under the Freedom of Information Act (FOIA) and that summary judgment was proper. The Department has conducted an adequate search pursuant to FOIA by providing the records in its possession. I write separately because, though not required under FOIA, the Department "ought" to have requested that all third-party private haulers produce the annual reports. The City of Chicago has the power to regulate public health. Ill. Const. 1970, art. VII, § 6(a); see also *City of Collinsville v. Seiber*, 82 Ill. App. 3d 719, 723 (1980). The city ordinance requires haulers to create and submit reports to the Department. Not only does the city

ordinance require the haulers to create and submit the reports, but the Department also has the power to issue fines to any hauler that fails to submit the annual reports. Chicago Municipal Code § 11-5-250 (added July 20, 2016).

¶ 47    Here, as related to part one of its FOIA request, the Chicago Recycling Coalition (CRC) sought reports of the 115 licensed third-party private haulers. The Department only produced reports from 43 haulers and provided no explanation or invoked any exemption under FOIA for not producing the reports of the remaining 72 haulers. CRC has suggested that the Department "just ask" the remaining 72 haulers to send in their annual reports. The Department's affidavit and its admission during oral arguments establish that it never attempted to obtain the missing reports from the haulers.

¶ 48    The adequacy of the public body's search for public records requested pursuant to FOIA is judged by a standard of reasonableness and depends upon the facts of each case. The crucial issue is not whether relevant documents may exist but whether the agency's search was reasonably calculated to discover the requested records. Although a public body is not required to perform an exhaustive search of every possible location, the body must construe FOIA requests liberally and search those places that are reasonably likely to contain responsive records. Whether a particular search was reasonable depends on the specific facts and must be judged on a case-by-case basis. *Better Government Ass'n v. City of Chicago Office of Mayor*, 2020 IL App (1st) 190038, ¶ 31. The Department has met its duty pursuant to the FOIA by supplying all the available reports.

¶ 49    While the Department met its legal obligation in conducting a reasonable search, I find it troubling that more than 63% of city-contracted haulers failed to produce the required reports. It is also concerning that the Department did not go above its legal duty and simply ask those haulers

to comply. In the interest of full disclosure, the Department "ought" to have asked the noncomplying haulers for the relevant information.

¶ 50    JUSTICE ODEN JOHNSON joins in this special concurrence.

---

*Chicago Recycling Coalition v. City of Chicago Department of Streets & Sanitation,*
**2023 IL App (1st) 220154**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-CH-10848; the Hon. Caroline K. Moreland, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Matthew Topic, Josh Loevy, Merrick Wayne, and Shelley Geiszler, of Loevy & Loevy, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Celia Meza, Corporation Counsel, of Chicago (Myriam Zreczny Kasper, Suzanne M. Loose, and Stephen G. Collins, Assistant Corporation Counsel, of counsel), for appellee. |

---