2026 IL App (1st) 241435-U

FIRST DIVISION
March 2, 2026

No. 1-24-1435

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| JAMES TOBIAS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 23 CH 05933 |
| CITY OF CHICAGO OFFICE OF THE MAYOR, | ) | |
| | ) | The Honorable |
| Defendant-Appellee. | ) | David B. Atkins, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Howse and Cobbs concurred in the judgment.

**ORDER**

*HELD*: The scope of the search by defendant for public records responsive to plaintiff's freedom of information request was reasonable and adequate, and summary judgment in favor of defendant on this issue is affirmed. Defendant was not entitled to summary judgment on plaintiff's claim for statutory penalties based upon defendant's assertion that its failure to produce responsive records until mid-litigation was not willful, intentional, or in bad faith as a matter of law.

¶ 1 Plaintiff-appellant James Tobias appeals from the circuit court's order denying his partial motion for summary judgment and granting summary judgment in full to defendant-appellee, the City of Chicago's Office of the Mayor (City), under the Freedom of Information Act (FOIA) (5

ILCS 140/1 *et seq.* (West 2022)). On appeal, Tobias contends the court erred in determining that the scope of the City's FOIA search was reasonable and in granting the City summary judgment as to civil penalties, thus declaring them unwarranted. We affirm in part and reverse in part.

¶ 2                                                  I. BACKGROUND

¶ 3     The record reveals that in May 2023, Tobias, an independent journalist, sent two FOIA requests to the City, with one seeking "[a]ll text messages sent or received by Chief of Staff Richard Guidice on May 15 and May 16, 2023," and the other seeking "[a]ll text messages between Mayor Brandon Johnson and Stacy Davis Gates, president of the Chicago Teachers Union," including "records produced between May 15, 2023 and *the date this request is processed*." (Emphasis added.) We take judicial notice that Mayor Johnson was inaugurated on May 15, 2023. See *People v. Castillo*, 2022 IL 127894, ¶ 39; *Boston v. Rockford Memorial Hospital*, 140 Ill. App. 3d 969, 972 (1986); City of Chi., Off. of the Mayor, www.chicago.gov/city/en/depts/mayor.html (last visited Dec. 11, 2025) [https://perma.cc/B6K5-2P7R].

¶ 4     The City assigned tracking numbers FO46961-051823 for the Davis Gates request and FO46965-051823 for the Guidice request, while recording submission dates of May 18, 2023. Nevertheless, the record reflects that Tobias e-mailed the requests to the City via the FOIA records system on May 19, 2023. The same day, the City responded to Tobias, noting that his requests had been submitted and were "being processed." The City also provided him the tracking numbers for review at the "Public Records Center." The parties on appeal appear to agree that May 19, 2023, is the date the City received Tobias's records requests. See 5 ILCS 140/3(d) (West 2022).

¶ 5　In response to the requests, on May 26, 2023, the mayor's assistant press secretary and FOIA officer Thomas Skelton contacted the Chicago Department of Assets, Information, and Services (Information Department) to initiate a search of Guidice's texts on his city-issued cell phone. The same day, Skelton issued letters via a computer application to Tobias, informing him that the City required a five-day extension, to June 2, 2023, for one or more of the reasons cited in the statute (*id.* § 3(d), (e)), including that the requested records were stored in other locations; personnel first had to examine whether the records were exempt; the requests could not be timely complied with absent undue burden to the public body; and they had to consult another public body or components of a public body having a substantial interest in the requests. Skelton did not obtain any responsive records by June 2, 2023, and, therefore, did not produce records by that due date. Under FOIA, this led to a constructive denial of the requests.[1] See *id.* § 3(e), (f) ("Failure to respond within the time permitted for extension shall be considered a denial of the request."). Several days later, on June 5, 2023, Tobias sought a status update, but the City did not respond.

¶ 6　On June 23, 2023, Tobias filed suit against the City, alleging it willfully and intentionally or otherwise in bad faith failed to comply with FOIA. As relief, Tobias requested that the City conduct "adequate searches of the requested records" and produce the non-exempt records, in addition to paying civil penalties and attorney fees. Attached to the complaint were the documents revealing the correspondences between Tobias and the City, including his requests.

---

[1]The parties do not dispute that on May 26, 2023, within five business days of May 19, the City properly sought to extend the time to respond to the records requests. See 5 ILCS 140/3(d), (e) (West 2022) ("The time for response *** may be extended by the public body for not more than 5 business days from the original due date"). The parties agree that the due date for records following that five-day extension was Friday, June 2, 2023. See *id*. We note that the due date was actually Monday, June 5, 2023, given that Monday, May 29, was Memorial Day and thus not a business day. We nonetheless proceed based on the parties' agreement.

¶ 7	The City filed its answer on August 4, 2023, also alleging several affirmative defenses, including that records of Mayor Johnson and Guidice were exempt. Specifically, the City asserted exemptions for private and personal information (*id.* § 7(1)(b), (c)); records involving expressed opinions or policies/actions (*id.* § 7(1)(f)); and certain communications/materials made in relation to litigation or an audit (*id.* § 7(1)(m)).

¶ 8	In October 2023, Tobias moved for partial summary judgment under FOIA, asserting that the public records were presumed to be open for inspection and the City had to prove any exemptions, and asking that the records be immediately released. He also moved for an index of the withheld records. See *id.* § 11(e). Tobias reserved seeking civil penalties and attorney fees for after a ruling on the requested records' production and search issues. See *id.* § 11(i), (j).

¶ 9	The City filed its opposition to the motion, along with its own cross-motion for summary judgment on November 20, 2023. As part of its motion, the City produced Tobias's requested records, consisting of four pages of text messages. The City maintained it had conducted a reasonable search and argued that Tobias's action was therefore moot. The City further asserted that the denial of Tobias's request was not made in bad faith and there was no evidence to merit civil penalties. In support, the City attached Tobias's complaint, along with the aforementioned records. The City also attached Skelton's affidavit, wherein he described the searches conducted on both Guidice's and Mayor Johnson's cell phones. As for Guidice, Skelton attested that the Information Department could not timely search his phone on May 26, 2023, because Guidice had not enrolled in text archiving.[2] Once Guidice did so, the Information Department conducted

---

[2] Skelton attested it was his understanding that when a cell phone user enrolls in text archiving, the system created an archive of all text messages on the phone, including those existing prior to the enrollment date.

the search. On July 13, 2023, the Information Department sent Guidice's responsive texts to Skelton.

¶ 10    Skelton attested that subsequently, on August 11, 2023, he searched Mayor Johnson's personal cell phone, seeking text messages from May 15 to June 2, 2023, the constructive denial date. See *Better Government Ass'n v. City of Chicago Office of Mayor*, 2020 IL App (1st) 190038, ¶ 36 (noting, communications pertaining to public business within public officials' personal text messages and e-mail accounts are public records subject to FOIA). During the search, Skelton identified a number of texts potentially responsive to the FOIA request, although certain ones were redacted as personal communications that did not qualify as public records. On August 24, Skelton asked the Information Department to search Mayor Johnson's city-issued cell phone, which did not produce any responsive texts. Due to the complaint Tobias filed and on the advice of counsel, Skelton did not provide Tobias with the responsive text messages. Skelton explained that he failed to meet the June 2, 2023, deadline because he "did not have any responsive records at that time."

¶ 11    The City therefore argued it was entitled to summary judgment. Tobias responded in relevant part that the City "arbitrarily limited the date range" of the Johnson/Davis Gates request. Tobias argued that, according to the plain language of his request which sought "records produced between May 15, 2023 and *the date this request is processed*," the City should have searched Mayor Johnson's personal cell phone for the dates, May 15 through August 11 (rather than June 2), 2023. He reasoned that the City "did not do any work to process the request until

August 11," when it conducted the search. Tobias also challenged as suspect the redactions and methodology for searching the cell phones.[3]

¶ 12 Tobias next argued that the court should deny the City's motion on civil penalties, maintaining that a reasonable fact finder could conclude the City had acted willfully, intentionally, and in bad faith by needlessly delaying production of the texts and asserting exemptions over documents it had never reviewed. He noted the City had filed its answer and affirmative defenses before reviewing all of the recovered records. Tobias requested an evidentiary hearing to determine whether civil penalties were warranted, although he expressly noted he had "not moved for civil penalties" but reserved the right to do so. He responded to the City's motion in that regard, claiming there was a genuine issue of material fact.

¶ 13 The circuit court heard oral arguments on the parties' cross-motions for summary judgment and, pursuant to the parties' agreement, conducted an *in camera* review of the redacted material, finding those messages did not constitute public records because they did not pertain to the transaction of public business. See 5 ILCS 140/2(c) (West 2022). The court then issued a written order denying Tobias's partial motion for summary judgment and granting the City's motion in full.

¶ 14 In so doing, the court rejected Tobias's contention that the City was required to extend the search date to August 11, 2023, based on Tobias's request of "records produced between May 15, 2023, and *the date this request is processed*." The court noted that the term "processed" was undefined and that shortly after receiving Tobias's requests, Skelton assigned them internal

---

[3]Tobias argued the City had not shown it adequately searched the mayor's city-issued cell phone, as there was no evidence the mayor had enrolled in text archiving. Tobias requested that the court order a supplemental search. Pursuant to that request, the City later filed a supplemental affidavit from deputy press secretary and FOIA officer Hibo Aden, attesting that following a search, there were no text messages between Mayor Johnson and Davis Gates on the mayor's city-issued cell phone from May 2023 to April 4, 2024.

reference numbers and notified Tobias of the five-day extension. The court ruled that June 2, 2023, the constructive denial date, was a proper end date for the search. The court further found the City's delay in producing records was not a deliberate, dishonest attempt to violate FOIA. Rather, the City simply did not have the requested records by the June 2 due date.

¶ 15    Following the granting of summary judgment for the City, Tobias appealed.

¶ 16                                  II. ANALYSIS

¶ 17    As set forth, the parties filed cross-motions for summary judgment on the issue of whether the City violated FOIA. In seeking summary judgment, the City also moved to avert the imposition of civil penalties, while Tobias claimed there was a genuine issue of material fact in that regard.

¶ 18    Summary judgment is proper where the pleadings, affidavits, depositions, admissions, and exhibits, when viewed in a light most favorable to the nonmoving party, demonstrate that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2022); *Koulogeorge v. Campbell*, 2012 IL App (1st) 112812, ¶ 21. Summary judgment is a drastic means of disposing of litigation and, therefore, should be allowed only where the moving party's right to judgment is clear and free from doubt. *Jackson v. TLC Associates, Inc.*, 185 Ill. 2d 418, 423-24 (1998). As such, if reasonable persons can draw divergent inferences from undisputed material facts or if there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact. *Id.* at 424. Where, as here, the parties also file cross-motions for summary judgment, they concede there are no genuine issues of material fact on distinct issues and invite the court to decide those questions presented as a matter of law. *Koulogeorge*, 2012 IL App (1st) 112812, ¶ 21. We proceed in our *de novo* review of the trial court's decision regarding summary judgment and the

construction of FOIA. *Kelly v. Village of Kenilworth*, 2019 IL App (1st) 170780, ¶ 29; *Dumke v. City of Chicago*, 2013 IL App (1st) 121668, ¶ 11; *Koulogeorge*, 2012 IL App (1st) 112812, ¶ 21.

¶ 19    The purpose of FOIA is to allow public scrutiny of governmental records. *Dumke*, 2013 IL App (1st) 121668, ¶ 12; 5 ILCS 140/1 (West 2022). The government, under FOIA, has a fundamental obligation to operate openly and provide public records as expediently and efficiently as possible. *Green v. Chicago Police Department*, 2022 IL 127229, ¶ 37. To that end, a public body must comply with a valid request for information within five business days of receiving the request, unless a narrow statutory exemption applies. 5 ILCS 140/3(d), 7 (West 2022); *Day v. City of Chicago*, 388 Ill. App. 3d 70, 73 (2009); see *In re Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 60 (records that do not fall within the statutory exemptions are improperly withheld); *Southern Illinoisan v. Illinois Department of Public Health*, 218 Ill. 2d 390, 418 (2006) (noting that "[t]he burden shall be on the public body to establish that its refusal to permit public inspection or copying is in accordance with the provisions of the FOIA").

¶ 20    Within that period, the public body also may extend its response time "not more than 5 business days from the original due date" for several enumerated statutory reasons, unless the parties otherwise agree in writing on an alternate extension date. 5 ILCS 140/3(d), (e) (West 2022). Although FOIA provides the public easy access to government information and encourages requestors to seek judicial relief where a public body wrongfully withholds records, FOIA may not be used to disrupt a governmental body's proper work beyond the responsibilities delineated therein. *Id.* § 1; *Special Prosecutor*, 2019 IL 122949, ¶ 25; *Uptown People's Law Center v. Department of Corrections*, 2014 IL App (1st) 130161, ¶ 10; *Dumke*, 2013 IL App (1st) 121668, ¶ 12.

¶ 21                                    A. Scope of the Records Search

¶ 22     Tobias first contends that the City improperly narrowed the scope of its search for public records under FOIA. Here, Tobias submitted two requests for governmental records, and the City extended the response period five business days but then did not produce the requested records by the June 2, 2023, deadline or respond to Tobias's query for a status update. See *Green*, 2022 IL 127229, ¶ 15; 5 ILCS 140/3(e), (f) (West 2022). As set forth, Tobias filed suit shortly thereafter, and the City ultimately provided Tobias with four pages of public records.

¶ 23     As before the circuit court, Tobias argues that the City failed to comply with his Johnson/Davis Gates request because it prematurely ended the records search on Mayor Johnson's personal cell phone.[4] Specifically, Tobias maintains that he sought all text messages between Mayor Johnson and Davis Gates between May 15, 2023, and "*the date this request is processed.*" Citing the principle that public bodies must liberally construe FOIA requests (*Better Government Ass'n*, 2020 IL App (1st) 190038, ¶ 31), Tobias asserts the language, "is processed," encompassed the days up to and including when the City ultimately *searched for* and *obtained* the records. He claims this was August 11. As relief, he asks that we reverse and remand for the City to conduct his proposed records search from May 15 to August 11, 2023, and produce any additional responsive records.

¶ 24     The City responds, as it did below, that it "processed" the Johnson/Davis Gates request on June 2, 2023, the date the request was constructively denied by statute. See 5 ILCS 140/3(e), (f) (West 2022). The City maintains the scope of its search was reasonable. Thus, there are no improperly withheld public records. See *id.* § 11(d).

¶ 25     To prevail on summary judgment under FOIA in this case, the public body had the burden of showing that its search and the scope of the search were adequate. See *Chicago*

---

[4]Tobias does not challenge the City's search of Mayor Johnson's city-issued cell phone.

*Recycling Coalition v. City of Chicago Department of Streets & Sanitation*, 2023 IL App (1st)

220154, ¶ 26; *Rodriguez v. Department of Defense*, 236 F. Supp. 3d 26, 35 (D.D.C. 2017). The

adequacy of that search must be judged by a standard of reasonableness and depends on the

individual facts of the case. See *Better Government Ass'n*, 2020 IL App (1st) 190038, ¶ 31. In

liberally construing the FOIA requests, the City was required to search those places that were

reasonably likely to contain the responsive records. See *id.*

¶ 26                              *The Plain Language of the Records Request*

¶ 27    We agree that the City did just that in analyzing the plain language, "*the date this request*

*is processed,*" and in describing the scope of its search via Skelton's affidavit. The verb

"process" means "to subject to or handle through an established usually routine set

of procedures," as in to "*process* insurance claims." (Emphasis in original.) Merriam-Webster

Online Dictionary, www.merriam-webster.com/dictionary/process (last visited Dec. 12, 2025)

[https://perma.cc/F6YC-RM5C]. The term "processed" in the phrase "is processed" is a past

participle functioning as a predicate adjective. See William Strunk Jr. & E. B. White, *The*

*Elements of Style* 18, 93 (4th ed. 1999).

¶ 28    Thus, the passive voice participial phrase can be interpreted in various ways given that

"to process" includes procedures or stages. For example, as the trial court noted, the City

"processed" Tobias's two FOIA requests when it acknowledged their receipt and assigned them

internal reference numbers. The City also "processed" the requests when it denied the requests

by operation of the statute when the response window closed. It then "processed" the requests

when it conducted the searches. Notably, the searches of Mayor Johnson's personal and work

cell phones occurred on different days, August 11 and 24, 2023, respectively.[5] Curiously, Tobias is not requesting a search through August 24, 2023, notwithstanding that his records request did not distinguish between Mayor Johnson's personal and work cell phones. Last, the requests were "processed" when the records were physically retrieved and then again when they were produced during litigation.

¶ 29    Tobias's request, even when liberally analyzed to effectuate FOIA's purpose of open governmental accountability, reasonably could be construed to require the search to conclude the date the devices were searched, when the records were retrieved, or when the records were produced. See *Better Government Ass'n*, 2020 IL App (1st) 190038, ¶ 31. Where a request may be interpreted in *multiple* ways, we will not require a public body to be bound to one interpretation over another. A person requesting documents of a governmental body funded by taxpayer dollars must make his request sufficiently clear, but Tobias did not do that. See *id.* at 97 (noting that "a requestor must 'reasonably describe[ ]' the records sought"). Otherwise, the request itself thwarts the expedient and efficient production of public documents.

¶ 30                         *The Scope of the Search for Records Was Adequate*

¶ 31    Regardless of the interpretations that Tobias's request inspired, we conclude the scope of the City's search was more than adequate. Here, the reasonable end date for the search was in fact May 19, 2023, when the City acknowledged receiving the request, rather than the statutory denial date. See *Better Government Ass'n*, 2020 IL App (1st) 190038, ¶ 31. When Tobias e-mailed his request on May 19, 2023, for text messages exchanged between Mayor Johnson and Davis Gates from May 15, 2023, until the date the request was "processed," Tobias effectively

---

[5]We observe that the City searched the officials' cell phones well past the June 2, 2023, statutory deadline. We address only the required scope of the search in light of the request and not the City's compliance with FOIA deadlines, a matter discussed in the second section of this decision.

asked for text messages that had not been created. That is, no text messages between May 20, 2023, and August 11, 2023, then existed. Under FOIA, an individual cannot prospectively request a record that does not yet exist. Therefore, the appropriate scope of the search was May 15 to May 19, 2023.

¶ 32    A review of FOIA supports this conclusion, as the statute's language is the most reliable indicator of the legislature's intent, and we must give effect to its plain and ordinary meaning. *Kelly*, 2019 IL App (1st) 170780, ¶ 29. Section 2 of FOIA defines "public records" as all records pertaining to the public business "having been prepared by or for, or having been or being used by, received by, in the possession of, or under the control of any public body." 5 ILCS 140/2 (West 2022); see *Hites v. Waubonsee Community College*, 2016 IL App (2d) 150836, ¶ 71 (noting that public records are "information or documentation pertaining to a public body's operation that the public body prepared, used, or had under its control"). Dovetailing with this definition, section 1.2 also states: "[a]ll records *in the custody or possession* of a public body are presumed to be open to inspection or copying." (Emphasis added.) 5 ILCS 140/1.2 (West 2022); see also *id.* §5 (requiring public bodies to make available "a reasonably current list of all types or categories of records under its control"). These statutory provisions contemplate that the records requested already must be in the public body's possession or under its control.

¶ 33    Likewise, the legislature expressly contemplated the consequences of when a public body fails to respond to a request within the five-day extension period but thereafter provides the requested public records. In such an instance, the public body cannot charge a fee for the copies and, if it fails to respond, cannot treat the request as unduly burdensome. *Id.* § 3(d). The statute does not provide that the search can be extended beyond the request date or, assuming the requested records exist, the statutory denial date. See *id.* ("Failure to comply with a written

request *** or deny a request within 5 business days after its receipt shall be considered a denial of the request."). We thus reject Tobias's contention that the City had to search for records up until August 11, 2023, the date the City searched Mayor Johnson's personal cell phone. We agree with the City that Tobias's "request cannot impose a more expansive obligation than that imposed by FOIA itself."

¶ 34     Tobias's argument also runs contrary to our supreme court's recent decision in *Green*, 2022 IL 127229. There, the plaintiff, a former inmate convicted of a quadruple homicide, submitted a request to the Chicago Police Department (CPD) on November 18, 2015, for past complaints against police officers. CPD constructively denied the request and cited, as an exemption, an injunction and court order issued in a separate case requiring CPD to destroy certain of those documents. The injunction, however, was subsequently invalidated and that case overturned during the litigation in *Green*. On appeal, the supreme court considered "whether FOIA authorizes the circuit court to account for changed circumstances" regarding whether the public documents were "improperly withheld" under section 11 of FOIA. *Id.* ¶ 1. More specifically, *Green* addressed whether the withholding of documents should be analyzed at the statutory denial stage, when the injunction/case precluded the documents' production, or during litigation, when the injunction/case were invalidated and no longer served as an exemption.

¶ 35     The supreme court in *Green* sided with the statutory denial period, stating a public body need not "continue monitoring a request once it has been denied." *Id.* ¶ 53. The court reasoned that a requester had five years to file a complaint after being denied access and could unfairly delay judicial review while requiring the public body to endlessly reprocess old requests or risk being penalized. The court, moreover, held that if circumstances change, a requester can simply resubmit "a previously unsuccessful request." *Id.* Although not directly on point, *Green* counsels

that in this case, the City was required to analyze Tobias's request based on records available during the statutory response period, not afterwards during litigation, as Tobias argues. Likewise, *Green* counsels that if Tobias wished to access text messages created beyond May 19, 2023, he simply could have submitted another FOIA request. See *id.*

¶ 36                                *Distinguishing Federal Caselaw*

¶ 37     Citing federal case law, Tobias nonetheless insists that the "date of search" was the proper end date for his request. We reject this contention for several reasons. First, federal court decisions remain only persuasive authority, notwithstanding the similarity between the Illinois and federal FOIA statutes, and this court is bound by decisions of the Illinois supreme court unless the United States Supreme Court offers contrary authority. *Special Prosecutor*, 2019 IL 122949, ¶ 55; *Village of Deerfield v. Greenberg*, 193 Ill. App. 3d 215, 222 (1990); see *Dumke*, 2013 IL App (1st) 121668, ¶ 14 (noting the Illinois FOIA was patterned after the federal Freedom of Information Act (5 U.S.C. § 552 (2000))). Tobias fails to point to any Illinois authority mandating the date-of-search end date for a request such as his. While he wishes this court to adopt that standard, we are not free to rewrite legislation or ignore the statutes identified above. See *People v. Reed*, 2025 IL 130595, ¶ 93.

¶ 38     Second, as the City notes, the federal FOIA differs in numerous ways from our state FOIA as to the records request and response process. Under the federal FOIA, governmental agencies have 20 days to determine "whether to comply with [a] request" once it is received, although that period may be extended in "unusual circumstances," such as when the records are stored in other facilities. 5 U.S.C. § 552(a)(6)(A)(i), (B), (C)(i) (2018). Also, if a request cannot be processed within 20 days, the agency may allow the requester to make amendments. 5 U.S.C. § 552(a)(6)(B)(ii) (2018). Regardless, if the agency determines to comply with a request, the

records must "be made promptly available" to the requester. 5 U.S.C. § 552(a)(3)(A), (6)(C)(i) (2018). As such, the federal provisions do not have a fixed compliance deadline. By contrast, our statutes provide for a short 5-to-10-day period to comply with or deny a request for records already under the public body's control. 5 ILCS 140/3(d) (West 2022). Tobias has not made a persuasive argument that the federal and state statutory schemes are sufficiently similar regarding the search process and scope such that we are compelled to follow federal law for the "date of search." See *Kelly* , 2019 IL App (1st) 170780, ¶ 43 (noting key differences can exist between federal and our state FOIA provisions).

¶ 39    Third, the federal cases on which Tobias relies are inapposite, as they involve federal administrative rules. In *Public Citizen v. Department of State*, 276 F.3d 634 (D.C. Cir. 2002), the plaintiff, a nonprofit organization, sued the Department of State alleging that its date-of-request cut-off policy had been promulgated without sufficient notice and comment under the federal administrative procedure rules and also was unreasonable when applied to the plaintiff's FOIA requests. On appeal, the district court rejected the first argument. As to the second, it merely held that the Department of State had "made no showing" that a date-of-request cut-off policy was *always* reasonable, thus suggesting it could be applied on a case-by-case basis. *Id.* at 643-44. As specifically applied to the plaintiff's FOIA request, the court held that the Department of State had failed to justify its date-of-request policy or that the alternative date-of-search cut-off would result in an "administrative nightmare." *Id.* at 644. The court reasoned that the plaintiff should not be forced to "file multiple FOIA requests to obtain documents that the Department [of State] would have released in response to a single request had it used a later cut-off date." *Id.* at 643. The court also reasoned that a date-of-search cut-off presented minimal hassle and increased documents retrieval.

¶ 40    Following that case, *Edmonds Institute v. United States Department of the Interior*, 383 F. Supp. 2d 105, 111 (D.D.C. 2005), stated that the D.C. Circuit had "all but endorsed the use of date-of-search as the cut-off date for FOIA requests." There, the court noted that the Department of Interior had adopted a date-of-search policy rule and rejected the plaintiff's request for a search cut-off on the date the documents were released. See 5 U.S.C. § 552(a)(1), (D)(i) (2018) (each agency must publish rules for public records requests).

¶ 41    Tobias's reliance on these cases is misplaced. Tobias has not pointed to any similar administrative rules issued by the City, or any other public body, which dictate a date-of-search cut-off date. Notably, under Illinois's FOIA, public bodies may promulgate rules and regulations in accordance with section 3 as to "the availability of records and procedures to be followed." See 5 ILCS 140/3(h) (West 2022). Moreover, our supreme court in *Green* expressly rejected the same reasoning that *Public Citizen* relied on to justify adopting a date-of-search policy. Our supreme court in *Green* stated: "Assessing the public body's denial under the circumstances that existed at the time of the denial fosters finality in processing information, allows a requester to refile the request to account for postresponse events, and promotes the goal of providing releasable records expediently and efficiently." *Green*, 2022 IL 127229, ¶ 58. Based on the foregoing, Tobias has failed to persuade this court that we must follow federal case law here.

¶ 42    We therefore conclude that the City has fulfilled its burden of establishing the scope of its search was more than reasonable and, thus, adequate. *Better Government Ass'n*, 2020 IL App (1st) 190038, ¶ 32. Tobias has failed to produce countervailing evidence or argument. See *id.* Thus, the scope/sufficiency of the search is not genuinely at issue, records were not improperly withheld, and the trial court rightly granted the City summary judgment on that issue.

¶ 43                              B. Civil Penalties

16

¶ 44     We next address Tobias's contention that the court erred in granting summary judgment to the City on civil penalties, declaring them unwarranted. Subsection 11(j) of FOIA provides that "[i]f the court determines that a public body willfully and intentionally failed to comply with this Act, or otherwise acted in bad faith, the court shall also impose upon the public body a civil penalty of not less than $2,500 nor more than $5,000 for each occurrence." 5 ILCS 140/11(j) (West 2022).

¶ 45     Here, the trial court noted that the City did not produce the relevant records on June 2, 2023, as required, but nevertheless concluded the delay was not a "deliberate, dishonest attempt to violate FOIA." The court reasoned that the City attested it did not have the records on June 2, it "retrieved" them several months later, and it ultimately produced them as part of the summary judgment motion.

¶ 46     Tobias maintains that, viewing the evidence in a light most favorable to him as plaintiff, there remains an issue of material fact as to whether civil penalties are warranted, notwithstanding the documents' production. See *Staake v. Department of Corrections*, 2022 IL App (4th) 210071, ¶ 32 (finding that although the requested FOIA documents were produced mid-litigation, the civil penalties claim survived); *Martinez v. City of Springfield*, 2022 IL App (4th) 210290, ¶ 43. He requests further proceedings to resolve this issue and an opportunity to file a petition for civil penalties. We review the matter *de novo*. See *Pielet v. Pielet*, 2012 IL 112064, ¶ 30; *Staake*, 2022 IL App (4th) 210071, ¶ 28; but see *Thomas v. County of Cook*, 2023 IL App (1st) 211656, ¶ 16 (applying a manifest-weight-of-the-evidence standard of review); *Edgar County Watchdogs v. Joliet Township*, 2023 IL App (3d) 210520, ¶ 31 (same); *Rock River Times v. Rockford Public School District 205*, 2012 IL App (2d) 110879, ¶ 48 (same).

¶ 47                    *The Plain Language of Subsection 11(j) of FOIA*

¶ 48    As set forth earlier, when interpreting a statute such as FOIA's subsection 11(j), we must honor the legislature's intent. The most reliable indicator of that intent is the statute's language, given its plain and ordinary meaning. *Special Prosecutor*, 2019 IL 122949, ¶ 23. To reiterate, the public body must have "willfully and intentionally failed to comply" with FOIA "or otherwise acted in bad faith." 5 ILCS 140/11(j) (West 2022). A willful act is "done deliberately," while an intentional act is "done by intention or design." Merriam-Webster Online Dictionary, www.merriam-webster.com/dictionary/willful (last visited Dec. 12, 2025) [https://perma.cc/6PY8-NRHA]; Merriam-Webster Online Dictionary, www.merriam-webster.com/dictionary/intentional (last visited Dec. 12, 2025) [https://perma.cc/H6SJ-DPWE]. "Bad faith" signifies a "lack of honesty in dealing with other people" and also "intentional deception, dishonesty, or failure to meet an obligation or duty," while "otherwise" is an adverb modifying the verb "acted" and means "in a different way or manner." Merriam-Webster Online Dictionary, www.merriam-webster.com/dictionary/bad%20faith (last visited Dec. 12, 2025) [https://perma.cc/38R8-WQKT]; Merriam-Webster Online Dictionary, www.merriam-webster.com/dictionary/otherwise (last visited Dec. 12, 2025) [https://perma.cc/3MR2-UFJ7].

¶ 49    Thus, to warrant civil penalties, the City's failure to comply with FOIA had to be done deliberately and by intention/design *or* the City had to in some different way act dishonestly or fail to fulfill its statutory duty. But see *Williams v. Bruscato*, 2021 IL App (2d) 190971, ¶ 15 (declining to honor the disjunctive, "or," and concluding that civil penalties are warranted only when a public body "intentionally *** deliberately, by design, *and* with a dishonest purpose" fails to comply with FOIA (emphasis added)); *Thomas*, 2023 IL App (1st) 211656, ¶ 15 (cases

cited therein following *Williams*). Ultimately, a plaintiff moving for civil penalties must establish that they are warranted.[6] *Williams*, 2021 IL App (2d) 190971, ¶ 17.

¶ 50                              *Subsection 11(j) of FOIA as Applied to this Case*

¶ 51     Here, the City does not dispute it failed to comply with the FOIA deadlines, but maintains the record "is devoid" of evidence establishing intentional, willful, or bad faith conduct on its part.[7] It relies on Skelton's affidavit. As stated, Skelton attested that he did not provide Tobias the records by June 2, 2023, because he did not have them at that time. He further attested that he also did not provide the records when received "on [the] advice of counsel" and due to the complaint Tobias filed. To reiterate, according to Skelton's affidavit, he sought records from the city-issued cell phone of Guidice on May 26, 2023. As Guidice was not then enrolled in the archiving system, the search must have occurred at a later date, but Skelton attested he received responsive texts on July 13, 2023. Mayor Johnson's city-issued cell phone was searched on August 24, 2023, revealing no responsive texts. Skelton himself also searched Mayor Johnson's personal cell phone on August 11, 2023, locating various text messages between Mayor Johnson and Davis Gates. The City ultimately produced the public records on November 20, as part of its summary judgment motion.

¶ 52     Tobias argues the City failed to offer a good-faith explanation for the delay. Relying on *BlueStar Energy Services, Inc. v. Illinois Commerce Comm'n*, 374 Ill. App. 3d 990 (2007), the City responds that good faith must be presumed from Skelton's affidavit. See *City of Chicago v. Janssen Pharmaceuticals, Inc.*, 2017 IL App (1st) 150870, ¶¶ 26-29 (finding *Bluestar* superseded by statute). In *Bluestar* (relying on *Carney v. United States Department of Justice*, 19

---

[6]Nothing in section 11(j) precludes a court from *sua sponte* imposing a civil penalty on a public body for failing to comply with FOIA. 5 ILCS 140/11(j) (West 2022).

[7]We note that in the City's answer, it admitted that it had not produced the records and that it was also aware of FOIA's statutory deadlines.

F.3d 807, 812 (2nd Cir. 1994)), the court observed that where affidavits supply facts that an agency has conducted a thorough search and give reasonably detailed explanations for why withheld documents are exempt, they are adequate on their face to sustain the agency's burden under FOIA at summary judgment; further discovery is unnecessary. *BlueStar*, 374 Ill. App. 3d at 996-97. *Bluestar* asserted the "[a]ffidavits submitted by an agency are accorded a presumption of good faith." (Internal quotation marks omitted.) *Id.* at 997.

¶ 53    We find the City's reliance on *Bluestar* misplaced where the City's affidavit in this case reveals an admitted FOIA violation with the almost two-month search delay and a sixth-month delay in records production. Also, as explained immediately below, all of the initial exemptions were abandoned. The affidavit thus was not "adequate" on its face in that regard, and this rebuts any presumption of good faith. Dovetailing with this point, the affidavit was not reasonably detailed. See *id.* at 996-97; see also *Kelly*, 2019 IL App (1st) 170780, ¶ 24 (noting, affidavits that are conclusory or overly vague or sweeping are insufficient). Skelton's statement that he did not have the documents on June 2, 2023, when due, offers no explanation for why the cell phone searches were conducted months later; it could be an innocent, perfectly justifiable explanation, or not. However, summary judgment should be denied when reasonable people can "draw divergent inferences from undisputed facts." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). At the very least, this delay raises a question of fact regarding whether the City's violation was in bad faith. Bad faith encompasses dishonesty and a failure to meet an obligation with due diligence.[8] See *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 222

---

[8]We agree with the City that a delay, by itself, does not constitute grounds for a civil penalty under subsection 11(j). The legislature expressly acknowledged that there could be some delays, with the consequences held against the public body. See 5 ILCS 140/3 (West 2022) (noting, "A public body that fails to respond to a request within the requisite periods *** but thereafter provides the requester with copies of the requested public records may not impose a fee for such copies. A public body that fails to

(1986) (noting, "due diligence" requires a party to have "a reasonable excuse for failing to act within the appropriate time").

¶ 54    Pointing to Skelton's affidavit, the City also cites the ongoing litigation as reason for the delay in handing over records. The City writes, "it was not 'bad faith' for the City to take the time to review the matter and follow standard litigation procedures" or "consider its litigation strategy." The City adds this "does not support an inference that it deliberately violated FOIA." We reject this position for a number of reasons.

¶ 55    First, Skelton's affidavit does not address litigation strategy. Second, and most notably, the City filed its answer to Tobias's June complaint on August 4, 2023, denying the claim that it had failed to adequately search for responsive records. That same date, the City also filed affirmative defenses asserting the records were exempt and, accordingly, Mayor Johnson's text messages "were properly withheld." See *supra* ¶ 7. Yet, Skelton did not search Mayor Johnson's city-issued or personal cell phone until mid-to-late August, which was *after* the City filed its answer and affirmative defenses. The City admitted as much during oral arguments in the trial court, with its lawyer stating, "I did not have the texts at the time of my answer."

¶ 56    "Standard litigation procedures" do not include claiming FOIA exemptions without having obtained and reviewed the underlying records at issue.[9] That practice is contrary to the

---

respond to a request received may not treat the request as unduly burdensome under subsection (g).")." However, as set forth, it is not clear whether the delay in this case was willful, intentional, or otherwise in bad faith, which is prohibited.

[9]The City justifies its conduct, arguing that its appearance and answer were due August 6, 2023, within 30 days of service and before Skelton could effectuate the searches of Mayor Johnson's cell phones. In so arguing, the City relies on Illinois Supreme Court Rule 181(a) (eff. July 17, 2020), but that rule applies only when the summons expressly requires an appearance within 30 days. The summons in this case was silent in that regard. Likewise, after an appearance under Rule 181(a), the trial court then directs the timeline for the answer or another appropriate motion. In other words, Rule 181 does not require a defendant to file affirmative defenses without first reviewing the underlying documents.

letter and spirit of FOIA. See 5 ILCS 140/7 (West 2022) (requiring a public record, with any elected redactions due to exemptions, to be available for inspection and copying); *Id.* § 9(b) (requiring a denial claiming an exemption to include "a detailed factual basis and a citation to supporting legal authority"); *Special Prosecutor*, 2019 IL 122949, ¶ 25 ("FOIA's exceptions to disclosure are to be construed narrowly so as not to defeat the intended statutory purpose."). To hammer our point, the City could not provide a detailed factual basis for an exemption because it had not read all the requested records when it claimed the exemption.

¶ 57     Third, the "litigation" defense also does not hold water where the City later abandoned all of the claimed exemptions.[10] Except for some personal communications from Mayor Johnson's own cell phone, which were redacted because they did not pertain to the transaction of public business, all of the requested records were required to be produced. See 5 ILCS 140/1.2 (West 2022) (noting that a public body's records "are presumed to be open to inspection or copying"). Fourth, the City has not adequately explained why it did not simply send the requested records to Tobias via its attorney around the time the devices were searched. See *Green*, 2022 IL 127229, ¶ 37 (under FOIA, the government must provide public records as expediently and efficiently as possible). We further reject the City's argument that it attached the documents to its summary

---

Second, that the litigation dates outpaced the City's search dates does not eliminate the question of why the search dates were delayed initially. As Tobias observes, FOIA requires a public body to comply with a request, at most, in 10 business days. 5 ILCS 140/3(d) (West 2022). Likewise, the City could have easily sought a continuance to file its answer and affirmative defenses but chose not to.

Both parties also dispute whether the City's attorney violated Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018), which provides that an attorney's signature on a pleading signifies it is "well grounded in fact" and "warranted by existing law" after reasonable inquiry and not filed for "any improper purpose," such as "unnecessary delay or needless increase in the cost of litigation." We need not enter into this fray, as we are tasked only with deciding whether the record, when read in a light most favorable to the nonmoving party, creates a question of fact as to whether the City was willful and intentional in violating FOIA or otherwise acted in bad faith.

[10]In its written order, the trial court noted that the City had not claimed a statutory exemption for the text messages from Mayor Johnson's personal cell phone but, rather, claimed the redacted material did not qualify as a public record under FOIA. See 5 ILCS 140/2(c) (West 2022).

judgment motion, instead of producing them sometime beforehand during litigation, because Tobias did not submit a discovery request for evidence. Tobias responds, and we agree, that this argument fails where the "production of responsive records in a FOIA case is not 'evidence,' " but "the very relief being sought." The City's line of reasoning also contradicts its arguments, discussed below, that Tobias is not entitled to discovery on civil penalties.

¶ 58    Last, the records consisted of only four pages with a single redaction, which raises the question of why the City would need "time to consider its litigation strategy," as it now claims. That does not appear to be an acceptable excuse. The foregoing smacks of dishonesty and a lack of due diligence, which could amount to bad faith. See *Smith*, 114 Ill. 2d at 222 (noting, in determining the reasonableness of an excuse, all circumstances must be considered, including the conduct of the litigants and their attorneys); *cf. Edgar County Watchdogs*, 2023 IL App (3d) 210520, ¶¶ 33, 35 (affirming the denial of a civil penalties petition, where the township reasonably interpreted the plaintiff's FOIA request as onerous and sought to recoup costs that, although not statutorily supported, did not reflect bad faith).

¶ 59    *Staake* is instructive. There, this court concluded that questions of fact remained as to whether the Department of Corrections (DOC), in bad faith, withheld records sought by an inmate under FOIA. *Staake*, 2022 IL App (4th) 210071, ¶ 51. We noted that the DOC claimed exemptions without offering a detailed factual basis and only produced the redacted records after the inmate initiated litigation. *Id.* ¶¶ 48-49. The DOC changed its reasoning for withholding a record when it was clear the alleged exemption did not save the DOC from producing the document. *Id.* ¶ 50. This court, accordingly, reversed the trial court's granting of summary judgment to the DOC and remanded for further proceedings as to civil penalties. *Id.* ¶ 58.

¶ 60     As in *Staake*, here, the process of withholding documents, the significant delay, and the mid-litigation production of records warrant further scrutiny.[11] Questions of fact remain regarding whether the City acted in bad faith, if not intentionally and willfully. Based on the foregoing, the City failed to fulfill its burden of persuasion and production as the moving party. See *Williams v. Covenant Medical Center*, 316 Ill. App. 3d 682, 688-89 (2000). Even assuming the City did fulfill its burden, thus shifting it to the nonmovant, Tobias has pointed to facts in the pleadings that would arguably entitle him to civil penalties. See *id.* at 689 (noting that a party opposing summary judgment may rely solely upon the pleadings to create a question of material fact).

¶ 61                                  *Relief Requested*

¶ 62     Tobias requests that we remand the matter for further discovery. Initially, the City argues that Tobias forfeited this issue by failing to file an Illinois Supreme Court Rule 191(b) (Jan. 4, 2013) affidavit seeking discovery. See *Kleiber v. Freeport Farm & Fleet, Inc.*, 406 Ill. App. 3d 249, 261 (2010) (finding the plaintiff forfeited the argument that granting the defendant summary judgment was premature, where she failed to seek a continuance and file a Rule 191(b) affidavit for additional discovery).

¶ 63     Here, however, the City moved for summary judgment as to civil penalties by pointing out *the absence* of evidence supporting Tobias's assertion of penalties in his complaint. See *Illinois State Bar Ass'n Mutual Insurance Co. v. Mondo*, 392 Ill. App. 3d 1032, 1036 (2009); see also *Jiotis v. Burr Ridge Park District*, 2014 IL App (2d) 121293, ¶ 25 (noting that, in a *Celotex*-type motion, the defendant asserts the nonmovant's evidence is insufficient to avoid judgment as

---

[11]Whether litigation prompted the records' production is also a relevant inquiry when considering whether to award attorney fees. See *Uptown People's Law Center*, 2014 IL App (1st) 130161, ¶ 20 (noting, successful plaintiffs may obtain attorney fees regardless of the extent to which they prevail, however slight); see also *Martinez*, 2022 IL App (4th) 210290, ¶¶ 43, 46.

a matter of law); *Williams*, 316 Ill. App. 3d at 688 (identifying the "*Celotex* test"). A plaintiff is not required to comply with Rule 191(b) where, as here, a defendant files a *Celotex*-type summary judgment motion. See *Jiotis*, 2014 IL App (2d) 121293, ¶ 26; *Williams*, 316 Ill. App. 3d at 692. "Although a plaintiff must comply with Rule 191(b) when a defendant has affirmatively shown that it is entitled to judgment, it is quite another matter to require such compliance when defendant, at an early stage, merely suggests that plaintiff is unable to prove his case." *Williams*, 316 Ill. App. 3d at 692.

¶ 64    The City also effectively argues that Tobias, by pursuing discovery, is improperly filing an "independent claim for civil penalties." We reject this assertion, even if the City forfeited it below, as Tobias argues. See *Finko v. City of Chicago Department of Administrative Hearings*, 2016 IL App (1st) 152888, ¶ 24 ("Failure to raise an issue before the trial court forfeits review of that issue on appeal."). Tobias's pursuit of penalties is directly tied to his declaratory judgment action filed against the City for FOIA violations. See *In re Marriage of Best*, 228 Ill. 2d 107, 117 (2008) (discussing declaratory actions). As stated, notwithstanding the documents' mid-litigation production, which satisfied part of Tobias's requested relief, civil penalties still may be warranted for the violations. See *Staake*, 2022 IL App (4th) 210071, ¶¶ 31-32. The remedy available is entirely dependent on subsection 11(j). In his complaint, Tobias requested as relief the civil penalties under 11(j), and he also requested a further investigation in response to the City's summary judgment motion. Even the City's case on which it relied, *BlueStar*, 374 Ill. App. 3d at 996-97, notes that discovery is a natural progression following summary judgment in FOIA cases. Accordingly, we reject the City's argument challenging Tobias's request for discovery.

¶ 65    We similarly reject the City's claim that an evidentiary hearing would be inappropriate. See, *e.g.*, *Hites*, 2016 IL App (2d) 150836, ¶¶ 14-20 (trial court held an evidentiary hearing on the defendant public body's motion to dismiss). The City merely rehashes arguments regarding its summary judgment motion that we have already rejected. However, given that subsection 11(j) permits the circuit court to impose only at most $5,000 for each violation, we expect the parties to be expeditious in resolving the civil penalties matter. See 5 ILCS 140/11(j) (West 2022). A short evidentiary hearing would seem to be the more suitable route.

¶ 66                                    III. CONCLUSION

¶ 67    Based on the foregoing, we affirm the granting of summary judgment in favor of the City in part and reverse the granting of the summary judgment in part, as to the matter of civil penalties. We remand for further proceedings consistent with this decision on whether civil penalties are warranted.

¶ 68    Affirmed in part and reversed in part; cause remanded.